[Civ. No. 20625. Second Dist., Div. Three. Aug. 31, 1955.]

NADINE ASHDOWN, a Minor, etc., Appellant, v. STATE OF CALIFORNIA DEPARTMENT OF EMPLOYMENT, Defendant and Respondent; REPUBLIC PRODUCTIONS, INC. et al., Interveners and Respondents.

Phill Silver for Appellant.

Edmund G. Brown, Attorney General, Irving Perluss, Assistant Attorney General, and Norman B. Peek, Deputy Attorney General, for Defendant and Respondent.

Loeb & Loeb, Donald T. Rosenfeld and Roger H. Davis for Interveners and Respondents.

WOOD (Parker), Acting P. J.—Nadene F. Ashdown, aged 8 years, by her guardian *ad litem* (her mother) sought a writ of mandate in the superior court commanding the Department of Employment to grant unemployment benefits to her. She appeals from the judgment denying a peremptory writ of mandate.

On August 15, 1953, Nadene (the petitioner herein) filed a claim for unemployment benefits. On September 11 a claims interviewer representing the Department of Employment made a determination that the child was ineligible for such benefits for the period beginning August 15, on the ground that she was not available for work. Petitioner (child) appealed from that determination. At the hearing on appeal before a referee of the department, the mother of the child testified that: the child had been engaged for the past three years in entertainment work in motion pictures, television and radio; she had sung and danced in theaters; she had done modeling work; the work was obtained for her by her agent and the witness (mother); last year she had been free-lancing and obtained work from two or three agents; in 1951 she earned about $3,000; in 1952 she earned $2,089.60; in 1953, prior to filing her claim, she earned about $819.75; she earned more money in motion pictures than she earned in other kinds of entertainment; her work in pictures was "acting" and "All spoken parts"; "She had done no pictures unless there was spoken parts"; she did no "extra work"; the witness did not register the child with Central Casting Corporation (which places extra workers in motion pictures); she did not have to register the child there—Central Casting registers children "if they have done nothing else but extra work"; she would have permitted the child to do extra work "if they wanted to pay her price"; she (child) established a price at "three, fifty, and the first check was $75"; she probably would have taken $18.50, which is the standard daily price, "if there was no other work to be had, but they never

called her on that,'' and usually ''they'' do not call children who have done featured parts; as to making an effort to get extra work for the child, she would have taken any work ''that would have come my (her) way''; on one occasion the child did an extra part in television.

The referee affirmed the determination of the interviewer, deciding that the child was ineligible for benefits from August 15, 1953, on the ground that she was not available for work within the meaning of section 57, subdivision (c), of the Unemployment Insurance Act. The referee found that the child was not registered with Central Casting whose primary function is placing individuals in extra work in the motion picture industry; the facilities of Central Casting are available for child actors if the child is registered there; the child has always taken a part and has never worked as an extra; there is little prospect of her obtaining full time employment. The referee stated, as reasons for the decision, that under section 57, subdivision (c), the individual in order to be eligible for benefits must be able to work and available for work; that the appeals board (in certain other cases) had held that motion picture extra workers who would accept extra work only at the higher rate of pay were unavailable for work within the meaning of section 57, subdivision (c), of the act, and that where claimant excluded a segment of suitable work wherein she had prospects of securing employment she rendered herself unavailable for work; in the present case, the claimant had confined her efforts to securing employment as an actress, and had not made any effort to secure work as an extra.

The mother, representing the child, appealed from the decision of the referee to the appeals board (of the department). The board affirmed the decision of the referee.

Thereafter the petition herein for a writ of mandamus was filed in the superior court, wherein the petitioner asked the court to direct the Department of Employment (1) to reverse the determination of the interviewer, the decision of the referee, and the decision of the appeals board; and (2) to direct the department to make a determination that the child was entitled to unemployment insurance benefits. The Director of Employment and the appeals board made a return to the petition by way of answer. Republic Productions, Inc., and Samuel Goldwyn Productions, Inc., as real parties in interest and as interveners, filed a demurrer, and filed a return by way of answer. The demurrer was overruled.

The court found, in part, that the child was a "featured" child actress only in the sense that she has had only speaking parts; the entertainment field has offered the child intermittent daily employment at wages of $70 to $100 a day; the child's employers have provided her with teacher welfare workers as prescribed by Los Angeles school regulations; petitioner (child) did not make any application to the appeals board to introduce additional evidence; the allegations of petition that the decisions of the referee and the appeals board were prejudicial abuses of discretion are not true; it is not true, as alleged in the petition, that the weight of the evidence presented by petitioner to the referee established that petitioner was available for work; the child was not registered with Central Casting Corporation; she worked as an actress in motion pictures, radio and television, and had one part in television as an extra; the mother would not have refused extra work for the child if extra work were offered to the child; the mother placed no restrictions on the amount of wages she was to receive for the child's services; the allegation of the petition that the findings of the referee are not supported by the evidence is not true; it is not true, as alleged in the petition, that by reason of the omission in the findings of the referee "of the evidence" set forth in "this petition," the petitioner has been denied a fair trial; no attempts were made by petitioner or on her behalf prior to August 15, 1953, to secure extra work in the motion picture industry by application for registration at Central Casting Corporation or by application at specific studios or through any other means; children are called for extra work in the motion picture industry, and such work is suitable for petitioner; during the "period 1951 to August 15, 1953," petitioner sought work primarily in the motion picture, radio and television industries; her employment was only for isolated single days or for a few days at a time; she was not genuinely attached to the labor market.

Under the designation of conclusions of law, the court stated that the evidence presented by petitioner at the claims interview and before the referee was not sufficient to sustain the burden of proving that petitioner was able to work, available for work, and seeking work; the determination of the claims interviewer and the decision of the referee were proper according to law, and that determination or that decision did not constitute a prejudicial abuse of discretion; work as an extra in the motion picture industry is suitable

work for petitioner; each and all of the findings of the referee as affirmed by the appeals board are supported by the weight of the evidence in the light of the entire record and no prejudicial abuse of discretion was committed by the referee or the appeals board; petitioner is not able to work and available for work within the meaning of section 57, subdivision (c), of the Unemployment Insurance Act, and she is not eligible for unemployment insurance benefits.

Appellant contends that she was not accorded her right to a limited trial de novo. She asserts that she should have been permitted to introduce additional evidence; that the court did not, in the exercise of its independent judgment, determine whether the findings of the administrative agency were supported by the weight of the evidence, but it merely determined that the decision of the agency was supported by substantial evidence. The position of appellant's counsel with reference to a trial de novo is not clear. It seems that he is of the opinion that the court was required to hear all or part of the previous testimony and to receive additional evidence. Such a theory is not correct. ■ Rules with respect to judicial review, by mandamus, of an administrative proceeding are stated in *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304]. It was said therein at page 798: "[T]he court is not confined to the record of the proceedings before the board. . . . Since the record before the board is competent evidence it should be considered and weighed along with other evidence in the cause." ■ Also it was said at page 799: "Nor was it ever contemplated that the time of the court should be consumed in a reiteration of the competent evidence presented to the board and contained in the record of its proceedings." ■ Also it was said at page 799: "If it should appear from that record that incompetent evidence had been received by the board, the complaining party should not be foreclosed from objecting on the trial to its admissibility. Also if the board had improperly refused to entertain admissible evidence the litigant should not be foreclosed from offering it at the trial. ■ If additional evidence not included in either category be sought to be introduced by a party, the court has the right to receive it upon a showing that, in the exercise of reasonable diligence, it could not have been introduced before the board." ■ Also it was said at page 801: "Those findings and orders [of the agency] have not the finality of a court judgment if attacked in an appropriate court pro-

ceedings, such as in mandamus. If in such a proceeding it appears that there was no breach of duty in the matter of receiving or refusing to receive evidence; that there is not other pertinent evidence which the trial court, in the exercise of a wise discretion, should receive, or that such other evidence should be and has been received, then the court has the power to make its findings of fact and conclusions of law and render judgment either denying the relief sought or by an appropriate writ directing the board to perform its official duty in the premises.'' Also it was said at page 800: ''If the proceedings before the board are to be questioned at the trial it would be the duty of the petitioner to set forth his objections in the petition for the writ.'' In the present case the petition alleged that the determination of the agency was a prejudicial abuse of discretion; that the decisions of the referee and the appeals board were prejudicial abuses of discretion; and that by reason of omissions in the findings of the referee, appellant was denied a fair trial. The record of the administrative proceeding was filed in court by the interveners as a part of their answer. Appellant did not request the court to receive additional evidence. The recitals in the findings and judgment show that the certified record of the administrative proceedings was before the court and that the parties argued the cause and filed written briefs, and that the matter was submitted for decision. As stated in respondents' brief ''the trial court was not required to solicit or order the introduction of additional evidence.'' The assertion of appellant that the court did not weigh the evidence is not correct. The recitals in the findings and judgment show that the court ''re-weighed the evidence in the light of the entire record.'' Also in the conclusions of law it is stated that ''the findings of the referee as affirmed by the appeals board are supported by the weight of the evidence in the light of the entire record.'' The assertion that the court merely determined that the decision of the agency was supported by substantial evidence is not correct. The record herein does not show such a determination. Respondents suggest that the only basis for such an assertion of appellant is an informal order of the court indicating to counsel what the judgment would be. Any such order is not a part of the record herein and is not the decision of the court. The findings of fact and conclusions of law constitute the decision. As to the allegations of the petition regarding abuse of discretion and denial of fair trial by the

agency, the court found that those allegations were not true. Appellant was accorded a limited trial de novo in the mandamus proceeding.

Appellant also contends that the decision of the referee, that the child had not made any effort to secure extra work and was not available for work, is not supported by the weight of the evidence. ██ ██ In a mandamus proceeding in a trial court, wherein a decision of an administrative agency having statewide jurisdiction is reviewed, the trial court is authorized to exercise its independent judgment on the evidence (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20] ; but upon an appeal from the judgment of the trial court in such a proceeding the province of the appellate court, with respect to the sufficiency of the evidence, is whether there is any substantial evidence which will support the judgment. (*Ibid.*) ██ Substantial evidence in support of the judgment was the testimony of the child's mother to the effect that no attempt was made to secure work by registering the child with Central Casting Corporation, which places extra workers in motion pictures; the mother would have permitted the child to do extra work if the child would get her price, which was a minimum of $70 a day ; the mother probably would have taken the standard daily price of $18.50 if there was no other work to be had, but they never called her about that; as to making an effort to get extra work, she would have taken any work that came her way. It is apparent that the attitude of the mother was that the child was entitled to get "her price" of at least $70 a day and if she did not get that amount she should have unemployment benefits. She did not seek extra work for which the child would be paid the standard price of $18.50 a day, or seek extra work at all, but her attitude was that if there was no $70-a-day work to be had and *if* someone were to call her about extra work and *if* such extra work should thereby come her way without any effort or seeking on her part, she might condescend to allow the 8-year-old child to work for the comparatively minor amount of $18.50 a day. It was alleged in the petition that extra work in motion pictures could be obtained only through Central Casting. By not registering the child with Central Casting, the mother practically assured herself that she would not be called regarding extra work and that such work would not come her way, and therefore she would not be required to refuse or to accept extra work. Apparently the mother did not respect the beneficent purposes of the unemployment

insurance statute, and was not genuinely seeking to obtain employment for the child. It is clear that the child worked intermittently and a comparatively few days each year. If she received $70 to $100 a day, then it appears that in 1951 when she received about $3,000 she worked about 30 to 40 days; in 1952 when she received $2,089.60 she worked about 20 to 30 days; and in 1953 when she received $819.75 she worked about 8 to 12 days. In other words, the child worked about one month in each year. There is no evidence that the child had any prospect of regular employment in the work she had been doing so intermittently for approximately three years. She was an 8-year-old child, who was required to attend school, and it appears that she could not be regularly employed. The mother chose to attempt to collect unemployment insurance benefits rather than to seek extra work for the child at $18.50 a day. Section 57 of the California Unemployment Insurance Act (Stats. 1949, p. 2510; 3 Deering's Gen. Laws, Act 8780d, as amended in 1949 [now in substance section 1253(c) of California Unemployment Insurance Code]) provides in part: ''An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that: . . . (c) He was able to work and available for work for such week.'' ▮ The burden was upon the claimant to prove that she was available for work. (*Loew's Inc.* v. *California Emp. Stab. Com.*, 76 Cal.App.2d 231, 238 [172 P.2d 938].) The conclusion of the trial court that the child was not available for work within the meaning of said section 57, subdivision (c), and the findings of the court that no attempt was made to secure extra work in motion pictures, and that the child was not genuinely attached to the labor market, are supported by substantial evidence.

▮ Appellant also contends that work as an extra is not suitable work for a featured actress and that the failure of the child to obtain extra work by registering with Central Casting did not render her unavailable for unemployment insurance benefits. She argues that work as an extra, at $18.50 a day, is not suitable work for an actress who has never worked as an extra in motion pictures and whose work has been confined to spoken parts for which she received a minimum of $70 a day. This contention is contrary to the allegations in the petition that extra work would not be refused, and is contrary to the testimony of the mother before the referee that she would not refuse extra work if it came her way. Section 13, subdivision (a), of the California Unemployment

Insurance Act (Stats. 1935, p. 1229, as amended in 1937; 3 Deering's Gen. Laws, Act 8780d, as amended in 1937, [now section 1258 of California Unemployment Insurance Code]) provides: " 'Suitable employment' means work in the individual's usual occupation or for which he is reasonably fitted, regardless of whether or not it is subject to this act. In determining whether the work is work for which the individual is reasonably fitted, the commission shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence. Any work offered under such conditions is suitable if it gives to the individual wages at least equal to his weekly benefit amount for total unemployment. In any particular case in which the commission finds it impracticable to apply one of the foregoing standards, the commission may apply any standard set by it which is reasonably calculated to determine what is suitable employment." The evidence shows that most of the child's work was in motion pictures, and her work included spoken parts. Differences between that kind of work and work as an extra are that work as an extra would not include a spoken part, and the compensation for extra work would be less. Such differences would not render the extra work unsuitable for her. The finding of the court that work as an extra in motion pictures was suitable work for the child is supported by substantial evidence.

Appellant also contends that the court, in overruling interveners' demurrer to her petition, committed error in that the court considered the evidentiary matters set forth in respondents' answer and in the administrative record. The record herein does not show that the court considered those matters in making the ruling on the demurrer. ▮▮ In any event, the demurrer was *overruled* and, of course, appellant was not aggrieved by such favorable ruling.

▮▮ Appellant also contends that the referee abused his discretion in permitting the claims interviewer to testify at the hearing on appeal before him. At the hearing the referee asked the interviewer if there were any additional facts which she thought would be pertinent that had not been covered. The interviewer replied: "I don't believe so. She is not registered with Central, but that has been brought out, and she got her first job through an agent, and her mother does not make the

contacts, but she has had different agents, and the agents make the contacts.'' The mother then said: ''I am sorry, I have made contacts. I have done contact work.'' The interviewer said: ''Well, you didn't tell me that. And she has done some television work in addition to her motion picture work. That is all I know.'' It thus appears that the testimony of the interviewer was in substance the same as the testimony of the mother regarding failure to register with Central Casting and regarding representation by different agents. Their testimony was conflicting only with respect to the matter of ''contacts'' allegedly made by the mother. As to that matter, the summation of the interviewer's testimony was that the mother had not told her that she made contacts. It was not error to receive the testimony.

Other contentions are without merit and do not require discussion.

The judgment is affirmed.

Vallée, J., and Ashburn, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 26, 1955.

*Assigned by Chairman of Judicial Council.