[S.F. No. 24139. Mar. 2, 1981.]

PACIFIC LEGAL FOUNDATION, Plaintiff and Appellant, v. UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant and Appellant.

104

**COUNSEL**

Ronald A. Zumbrun, John H. Findley and Sandra M. Robertson for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Carol Hunter, Deputy Attorney General, for Defendant and Appellant.

John A. Fillion, Jordan Rossen, Stephen P. Berzon, Evelyn R. Frank and Altshuler & Berzon as Amici Curiae on behalf of Defendant and Appellant.

**OPINION**

**NEWMAN, J.**—The California Unemployment Insurance Appeals Board (board) challenges a judgment declaring invalid its decision that

claimant Thurman Carroll was eligible for benefits. (P-B-292 (Carroll) (1976).) Plaintiff Pacific Legal Foundation cross-appeals from a post-judgment order that denied its motion for attorneys' fees.

Plaintiff sought declaratory relief under Unemployment Insurance Code sections 409 through 409.2. Those statutes permit the board to designate certain of its decisions as precedents, subject to court challenge by "interested person[s] and organization[s]."[1] Plaintiff was not a party to the proceeding before the board. (See *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1977) 74 Cal.App.3d 150 [141 Cal.Rptr. 474] (*Pacific I*).)

The principal issue is whether claimant's job-seeking efforts complied with requirements that, while receiving benefits, he be "available for work" (§ 1253, subd. (c)) and conduct "a search for suitable work" as directed by the public employment office. (§ 1253, subd. (e).)[2]

We conclude the facts stated by the board support its holding that claimant followed the seek-work instructions given him by the public employment office. The board correctly ruled that, by doing so, he fulfilled his duty to seek work for purposes of benefit eligibility. Therefore, we reverse the judgment, but we uphold the order denying attorneys' fees.

*1. Facts.*

Thurman Carroll, age 64, had long worked as a gardener and caretaker. He lost his caretaker's job in February or March 1975. On June

---

[1]Section 409.2 provides: "Any interested person or organization may bring an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1."

All statutory references are to the Unemployment Insurance Code unless otherwise indicated.

[2]Section 1253 provides: "An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that: [¶] (a) A claim for benefits with respect to that week has been made in accordance with authorized regulations. [¶] (b) He has registered for work, and thereafter continued to report, at a public employment office or such other place as the director may approve. Either or both of the requirements of this subdivision may be waived or altered by authorized regulation as to partially employed individuals attached to regular jobs. [¶] (c) He was able to work and available for work for that week. [¶] (d) He has been unemployed for a waiting period of one week as defined in Section 1254. [¶] (e) He conducted a search for suitable work in accordance with specific and reasonable instructions of a public employment office."

2, 1975, while seeking unemployment insurance benefits in the Marysville office of the Employment Development Department (EDD), he was instructed to register for work and seek farm labor in addition to gardener-caretaker positions.

On June 14 he was asked to complete a questionnaire about his seek-work efforts for the two weeks just ended. He declared he had responded to three classified advertisements for caretakers and had gone to an employment office. The EDD then denied benefits for those weeks on grounds his compliance with the June 2 instructions had not been diligent, and he had not made himself genuinely available for work.

On appeal he testified as follows at a hearing before an administrative law judge (ALJ): During the two weeks ending June 14 he registered at the Marysville farm labor office. He checked there or at a private employment office for farm work and was told there would be none "until tomatoes started." He scanned three newspapers daily for caretaker work and sought work at two industrial plants, including one where he thought a caretaker was needed.

Asked about his failure to contact farmers personally, he stated that those he knew were not hiring. He indicated that the gas necessary to travel from farm to farm was more than he could afford.

The ALJ upheld the decision to deny benefits on two grounds. First, lack of diligence in seeking farm work as instructed disqualified Carroll for benefits under subdivision (e) of section 1253; second, his failure to take an initiative beyond the EDD's instructions in seeking suitable work meant he was not "available for work" under subdivision (c).

The board disagreed, holding that subdivisions (c) and (e) are separate requirements. A claimant, it said, may not be deemed unavailable for work under (c) if he has complied reasonably with seek-work instructions under (e); and Carroll did so.

Plaintiff sought a judicial declaration that the board's decision was invalid. The trial court adopted the ALJ's reasoning. Exercising its independent judgment, it found that the evidence showed Carroll's failure to comply with EDD instructions to seek farm work. It held that his lack of diligence in searching for all suitable work rendered him unavailable for work under subdivision (c). It issued a declaratory

judgment that P-B-292 was invalid and that Carroll was ineligible for benefits. The Board was ordered to modify P-B-292 to conform to the judgment. (See § 409.1.) Plaintiff's subsequent motion for attorneys' fees was denied and these appeals followed.

The board challenges the trial court's rulings under both subdivisions (c) and (e). To respond, we must decide the proper role of the trial and appellate courts in a declaratory relief action under section 409.2.

*2. Scope of review under section 409.2.*

■ This court recently reaffirmed that a dispute about an employer's liability for unemployment benefits affects both the claimant's and the employer's "fundamental vested rights." Hence, when either challenges a board decision by administrative mandamus (Code Civ. Proc., § 1094.5) the trial court must judge independently the evidence in the administrative record. On appeal, the court's findings, even where contrary to those of the board, cannot be overturned for evidentiary insufficiency if they are substantially supported. (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 775-776, 777-782 [163 Cal.Rptr. 619, 608 P.2d 707].)

But one suing under section 409.2 as an "interested person or organization" may be neither of these original parties. The board's findings have no immediate effect on the unemployment insurance reserve accounts or other interests of third persons. They do not deprive such persons of "fundamental vested rights." (See *Interstate Brands, supra,* at p. 781; *Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149, 155-156 [129 Cal.Rptr. 743].) And the declaratory relief statutes, unlike section 1094.5, do not provide for independent-judgment review. (Compare Code Civ. Proc., § 1060 et seq.; see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 137-140 [93 Cal.Rptr. 234, 481 P.2d 242].)

Further, as amicus United Auto Workers International Union argues, the Legislature apparently intended to grant quite limited review rights to the class of "interested" nonparties entitled to seek declaratory relief against a precedent decision. Section 409.2 (Assem. Bill No. 1638 (1975-1976 Reg. Sess.)) is patterned after Government Code section 11350 (formerly § 11440). That statute gives "interested persons" the right to "obtain a judicial declaration as to the validity of any regula-

tion ..." and allows those affected by a regulation to test its legality before risking violation. (*Chas. L. Harney, Inc.* v. *Contractors' Bd.* (1952) 39 Cal.2d 561, 564 [247 P.2d 913].)

In almost identical words section 409.2, enacted nearly three decades later, provides a parallel remedy for persons "interested" in a precedent benefit decision. The class includes those who, though "not directly involved in" a benefit case (see Leg. Analyst, Analysis of Assem. Bill No. 1638 (Aug. 20, 1975) p. 1), "may be subject to" a precedent decision. (*Pacific I, supra,* 74 Cal.App.3d 150, 156; see also p. 154 [noting similar words and intent of former § 11440].)

Section 409.2 recognizes that precedent decisions are akin to agency rulemaking, because they announce how governing law will be applied in future cases. (See Leg. Analyst, *supra.*) Therefore, the statute gives persons affected by the precedent judicial recourse similar to that available against regulations generally. (See *Pacific I, supra,* at pp. 155-156, quoting a letter from the bill's author to the Governor, urging that AB 1638 be signed ["... For all practical purposes, precedent benefit decisions are regulations and should be treated accordingly."]; cf. 2 Davis, Administrative Law Treatise (2d ed. 1979) § 7:4, p. 15 et seq.) Section 409.2, like section 11350, confers standing on nonparties only to vindicate their concern with the validity of the general rule or policy announced.[3]

A challenge to agency rulemaking may involve judicial review of a factual record when the rule must be justified by evidence of specified conditions. (See, e.g., *California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 211-213 [157 Cal.Rptr. 840, 599 P.2d 31]; *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83].) But the board's precedent decisions simply interpret controlling statutes and regulations. Their correctness as precedent relates to law and policy, not to adjudicative fact. (Cf. *International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1].) The board's resolution of evidentiary

---

[3]This restricted view of the standing conferred by section 409.2 is confirmed by the fact that, like Government Code section 11350, it makes declaratory relief available "in accordance with the provisions of the Code of Civil Procedure ...." That reference is to sections dealing generally with declaratory judgments (§ 1060 et seq.). (*Pacific I, supra,* at p. 154.) Section 1060 provides that a person interested in an "actual controversy" may sue for a "declaration of *his* rights and duties in the premises ..." (Italics added.)

quarrels between claimant and employer is irrelevant to third persons' regulatory interest in the decision.

For similar reasons, a declaratory judgment obtained by a third person under section 409.2 does not alter the rights of the original parties as determined by the board. The third person's concern with the decision as precedent provides no basis to disturb the actual award or denial of benefits in a particular case.

Indeed, if the section were interpreted to mean that third persons not affected by "adjudicatory aspects" of the original proceeding could bring an action to which the original disputants were not parties—in which adjudicative facts, as well as orders directly concerning those disputants could be reexamined—there would be serious due process problems.

We recognize that a superficial reading of section 409.1, a companion statute not yet discussed, could suggest that a declaration of invalidity under section 409.2 has consequences beyond the precedential effect of a board decision. Section 409.1 states that whenever a court judgment "reverses *or* declares invalid" a precedent decision, the board must "modify" the decision "to conform in all respects to the judgment," and the modified decision supersedes the original "for all purposes." (Italics added.)[4]

Yet the separate reference in section 409.1 to reversals and declarations of invalidity reflects, we think, the distinction between the review rights accorded the original parties on the one hand and interested third persons on the other. In actions brought by the former, the court may review the administrative record and "reverse" the board decision, altering the outcome between those parties. The board's conforming modifications take account of that effect, and the decision is "supersede[d]" to the full extent the reversal may require.

---

[4]Section 409.1 provides: "If a final judgment of a court of competent jurisdiction reverses or declares invalid a precedent decision of the appeals board issued under Section 409 or this section, the appeals board, acting as a whole, shall promptly modify the precedent decision to conform in all respects to the judgment of the court. The modified precedent decision shall supersede the prior precedent decision for all purposes. The appeals board shall promptly notify the director, the referees of the appeals board, and all other subscribers to the precedent decisions, of the modified precedent decision."

A judicial declaration of invalidity obtained by a third person, however, does not alter the operative impact between claimants and employers. Under section 409.1, the original decision is to be "modified" and "supersede[d] ... for all purposes" only to the extent of the judgment thus limited.

It follows that in a third-party declaratory action under section 409.2 the courts may only determine whether the board decision accords with the law that would govern were the rule announced articulated as a regulation. There should be no review of the underlying record or new evidence to discover whether the board correctly resolved disputes on adjudicative facts. The board's version of those facts may not be disturbed unless it lacks substantial support on the face of the decision. And whatever result a court reaches on the merits, the declaratory judgment may not alter the result between the parties.

In deciding whether the board's application of governing law may be upheld, reviewing courts will apply settled standards. Statutory construction is a matter of law for the courts (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]), and administrative interpretations must be rejected where contrary to statutory intent. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231].) But because of the agency's expertise, its view of a statute or regulation it enforces is entitled to great weight unless clearly erroneous or unauthorized. (*International Business Machines* v. *State Bd. of Equalization, supra,* 26 Cal.3d at pp. 930-931; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].) Courts may not substitute their judgment for that of the agency on matters within the agency's discretion. (See *Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 656-657 [128 Cal.Rptr. 881, 547 P.2d 993].)

*3. Compliance with seek-work instructions.*

■ The board argues the trial court erred in finding that Carroll did not comply diligently with seek-work instructions. We agree. The legislative history reinforces the board's conclusion that Carroll's registering at a state farm labor office and relying on its job information was reasonable compliance.

The seek-work statute, as adopted in 1947, provided that claimant must comply with seek-work "regulations." (See Stats. 1953, ch. 308,

§ 1253, subd. (c), p. 1501; Stats. 1947, ch. 651, § 1, pp. 1692-1693.) In 1961 it was amended to its current form. (Stats. 1961, ch. 2208, § 1, p. 4553.) For the first time the department was charged with directing claimants' work-search efforts in detail.

The Legislature apparently believed it was unfair to make each claimant guess what seek-work effort was necessary to maintain eligibility in his case. It therefore eliminated the open-ended "regulations" requirement and substituted a mandate that the EDD give each claimant "specific" instructions—the guidance appropriate for his particular circumstance.

Under subdivision (e) the claimant must adopt a course of action "reasonably designed to result in his prompt employment in suitable work, considering the customary methods of obtaining work … and the current condition of the labor market." (Cal. Admin. Code, tit. 22, former § 1253, subd. (c)-1; see now §§ 1253, subd. (c)-2, 1253, subd. (e)-1(a); see also Unemp. Ins. Code, § 100.) (Pertinent sections of the Administrative Code are hereafter called the Regulations.) But his duty is circumscribed by the EDD's responsibility under subdivision (e) to design a proper "course of action" for each case. When the EDD is better situated than the claimant to know "customary methods of obtaining work … and the current condition of the labor market" subdivision (e), sensibly read, means that he may rely on its advice or that of another state agency to which it has referred him.

So far as the board's decision here reveals, when the EDD told Carroll to seek farm work, an occupation unfamiliar to him, its only "specific" instruction was to register at the state farm labor office. He did so[5] and was told that no farm work was available "until tomato harvest." He had no contrary information, and there is no indication he knew or should have known farm labor conditions or hiring practices. If the office's advice was true, farm-to-farm inquiries would have been expensive, time-consuming, and useless. They would have detracted from his simultaneous efforts, also required by the EDD, to become reemployed as a caretaker. Under those circumstances and according the

---

[5]At oral argument before this court plaintiff for the first time urged that the trial court found Carroll did not "register" for employment, a separate eligibility requirement under subdivision (b) of section 1253. Thus, it is contended, there is an independent basis for upholding the judgment. Yet we must accept the board's contrary finding unless it is erroneous on its face (see discussion, *ante*, pp. 110-111); no facial error appears.

board the deference due its application of unemployment insurance law, we hold that it is a reasonable interpretation to conclude he had complied with the governing instructions.

In any event the 1975 Regulations provided that registration alone might be deemed an adequate work search whenever the EDD found "that for a particular locality, occupation, or class of claimant during a certain interval, the prospects of suitable job openings other than those listed with the public employment service are so remote that any effort to seek work other than by registration for work ... would be fruitless to the claimant and burdensome to employers, ..." (Regs., former § 1253, subd. (c)-1; see now § 1253, subds. (e)-1(d).) In concluding that inquiries by Carroll would have been "unreasonable" after the labor office advice, the board utilized the "fruitless and burdensome" phrase in the regulation. That was a clear invocation of the registration-only rule. The board's opinion, on its face, provides no basis to repudiate its expert determination that his chances for farm employment before tomato harvest, or by individual inquiry, were remote. Thus the ruling that he complied with seek-work requirements under subdivision (e) must be upheld.

*4. Work search as requisite of availability under section 1253, sub-division (c).*

The board next says the trial court erred by concluding that, even if Carroll did follow seek-work instructions under section 1253, subdivision (e), he remains ineligible under section 1253, subdivision (c) because he failed to make a diligent search on his own initiative for all suitable work.

That seems correct. The trial court's interpretation contravenes the established meaning of "availability for work." In *Sanchez v. Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55 [141 Cal.Rptr. 146, 569 P.2d 740], this court rejected a contention that claimant's self-imposed time restrictions rendered her unavailable even though it materially reduced her chance for reemployment and prevented her from working at times normal in her usual occupation. "... 'Availability for work' within the meaning of section 1253, subdivision (c)," said the court, "requires no more than (1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substan-

tial field of employment. [Fn. omitted.]" (P. 67; see also *Glick* v. *Unemployment Ins. Appeals Bd.* (1979) 23 Cal.3d 493, 499 [153 Cal.Rptr. 1, 591 P.2d 24].)

In other words, "availability" reflects a concern not as to the search for work but as to the restrictions claimant imposes on the work he will accept. That view is accepted in states with similar statutes. (*Sanchez, supra*, 20 Cal.3d at p. 64.)

Settled principles of statutory construction also support the board's position. ▮ Wherever reasonable, interpretations which produce internal harmony, avoid redundancy, and accord significance to each word and phrase are preferred. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) Subdivision (e) sets forth specific work-search requirements and is the only portion of section 1253 which makes express references to the claimant's seek-work responsibilities. To infer from the "availability" language of subdivision (c) a seek-work obligation broader than that stated in subdivision (e) would strain the former and render the latter pointless. ▮ The specification of "availability" and "seek work" requirements in separate sections implies that the Legislature considered them discrete tests.

Early versions of the California statute included sections dealing with "availability" and "registration" but contained no seek-work language. (See, e.g., Stats. 1939, ch. 674, § 13, p. 2150; Stats. 1935, ch. 352, § 56, p. 1238.) That language was added in 1947 as subdivision (f) of section 57. (Stats. 1947, ch. 651, § 1, pp. 1692-1693, *supra.*) It couched the requirement in terms of compliance with all "regulations." (See discussion *ante.*)

In 1953 the law was revised and enacted as the Unemployment Insurance Code. The seek-work requirement, still focusing on "regulations," was combined with the "availability" requirement in new section 1253, subd. (c). (Stats. 1953, ch. 308, § 1253, subd. (c), p. 1501, *supra.*)

The 1961 amendment rephrased "availability" and "seek work" in separate subdivisions. The requirement of a job search in compliance with "regulations" gave way to the more limited command that claimant follow "specific and reasonable [seek-work] instructions" from the local employment office. (Stats. 1961, ch. 2208, § 1, p. 4553.)

For at least three reasons that legislative history compels the conclusion that subdivision (e) states completely claimants' obligation to seek work. First, it shows that the Legislature has consistently considered "availability" and "seek work" requirements to be separate tests for eligibility. Second, it suggests development of a policy that the department tell each claimant *in detail* what reasonable, job-seeking efforts the law demands in his case. (See discussion *ante.*) Third, the earlier versions of subdivision (e), by their broad expressions that claimant must meet all seek-work "regulations," suggest that the Legislature uses that subdivision to express the limits of its policy.

Plaintiff argues that section 1253 must be read in light of section 100, enacted in 1953, which expresses the intent that "unemployed persons claiming unemployment insurance benefits shall be required to make *all reasonable effort* to secure employment *on their own behalf.*" (Italics added.) But nothing in section 100 contravenes a conclusion that section 1253, subdivision (e) circumscribes claimants' duty to seek work. Section 1253, subdivision (e) simply implements the policy of section 100. In effect it defines "all reasonable effort" in terms of compliance with "specific and reasonable instructions" from the employment office.[6]

■ Even if section 100 did indicate a work-search standard inconsistent with that stated in section 1253, subdivision (e), the specific and more recent section would seem to control the general and less recent. (Code Civ. Proc., § 1859; *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) We conclude that section 100 does not imply greater seek-work responsibilities than section 1253, subdivision (e) prescribes.

■ Plaintiff says the Legislature has acquiesced in rulings by the EDD, the board and the courts that "availability for work" includes a distinct seek-work requirement. These rulings, it contends, are administrative constructions of the statute to which we should defer. We disagree.

The courts have suggested that a claimant may be "unavailable" under subdivision (c) when there is evidence that his lack of diligence

---

[6]The phrase "on their own behalf" in section 100 implies that claimant may be required to conduct his own job search. Again, that is not inconsistent with the view that the search should take place under departmental guidance.

caused the loss of an actual employment opportunity (e.g., *Swaby* v. *Unemployment Ins. Appeals Bd.* (1978) 85 Cal.App.3d 264, 270 [149 Cal.Rptr. 336] [refusal to apply for seasonal farm work in area where work was available];[7] *Spangler* v. *California Unemp. Ins. App. Bd.* (1971) 14 Cal.App.3d 284, 288 [92 Cal.Rptr. 266] [no showing, as required, that failure to "spruce up" lost actual job opportunity]; *Ashdown* v. *State of California* (1955) 135 Cal.App.2d 291, 299-300 [287 P.2d 176] [refusal to call central casting office when employment as "extra" actor would have been obtained]; *Loew's, Inc.* v. *California Emp. etc. Com.* (1946) 76 Cal.App.2d 231, 241-242 [172 P.2d 938] [same]) or where his actions have precluded any possibility that he could accept work if offered it. (*International Union of United Auto etc. Workers* v. *Department of Human Resources Dev.* (1976) 58 Cal. App.3d 924, 931 [130 Cal.Rptr. 368] [unexcused absence from state].) None holds that subdivision (c) imposes an open-ended job search requirement.

Several board decisions are cited for the principle that the law imposes a duty to seek all suitable work. (See, e.g., P-B-260 (Gosha) (1976); P-B-170 (Anderson) (1976); P-B-61 (Miller) (1969); P-B-17 (Griggsby) (1968); P-B-1 (Anderson) (1967); Benefit Dec. Nos. 5989 (Warford) (1953); 5733 (O'Gatty) (1951); 5718 (Daum) (1951).) None clearly rules, though, that the current wording of subdivisions (c) and (e) invokes a seek-work duty beyond that imposed by the department in its instructions to claimant. Indeed, in P-B-196 (Hudson) (1976) the board affirmed that seek-work issues are to be resolved under subdivision (e), not subdivision (c). P-B-196 is a republication under section 409 of the previously issued Benefit Decision No. 5641 (1950), indicating that this has been the board's consistent policy.[8]

Finally, plaintiff points to section 1253, subdivision (c)-2 of the Regulations, which purports to implement subdivision (c) of the statute. That section now provides that a claimant ruled ineligible for any week because he is not able or available will remain ineligible until he shows

---

[7]Parts of *Swaby* might be read to suggest that an "effective" work search is a prerequisite to availability under subdivision (c). (See 85 Cal.App.3d at pp. 270-271.) But elsewhere the court notes that the sections relevant to Swaby's appeal were subdivisions (c) *and* (e), "which require that a claimant be available for work *and* that he search for suitable work...." (*Id.*, at p. 269, italics added.) The ambiguous holding hardly proves "acquiescence" by the Legislature in plaintiff's proposed statutory construction. To the extent it may support that construction, we disapprove *Swaby*.

[8]Section 409 permits such republication as "precedents" of previous benefit decisions.

he is able, available, "and ... pursuing a course of action reasonably designed to result in prompt reemployment in suitable work."

Recent changes in the Regulations, however, evidence once more the department's recognition that seek-work requirements should be considered under subdivision (e) rather than subdivision (c). Before March 1979 (and during the benefit weeks here at issue), section 1253, subdivision (c)-1 contained many of the department's detailed rules for seeking work. At the same time, section 1253, subdivision (c)-2 provided that the requirements for reestablishing lost eligibility (see our preceding paragraph) applied to any claimant ruled ineligible because he was not able or available "or [had] not made a reasonable effort to secure work in his own behalf."

The 1979 amendments then repealed section 1253, subdivision (c)-1; and its substance was moved to a new section, 1253, subdivision (e)-1, adopted under authority of subdivision (e) of the statute. Contemporaneously, the first reference in section 1253, subdivision (c)-2 to persons ruled ineligible for failure to seek work was deleted.[9]

■ In any event, administrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent. (*Sanchez v. Unemployment Ins. Appeals Bd., supra,* 20 Cal.3d 55, 67; *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848]; *Rivera v. City of Fresno, supra,* 6 Cal.3d 132, 140.) We think section 1253, subdivision (c)-2 of the Regulations, insofar as it suggests a separate seek-work requirement under subdivision (c) of the statute, is contrary to persuasive evidence of the Legislature's intent.

We therefore conclude that an applicant for benefits fulfills his duty to seek work if he follows with reasonable diligence the "specific and reasonable [seek-work] instructions of a public employment office." (§ 1253, subd. (e).) The board's holding to that effect was proper. Thus the judgment should be reversed.

---

[9]Section 1253, subdivision (c)-2 now provides (deleted material italicized; added material shown in brackets): "... [A] claimant who is ineligible for benefits because he [or she] is not able to work or available for work *or has not made a reasonable effort to secure work on his own behalf* shall be ineligible for the week in which such occurs and shall remain ineligible in subsequent weeks until he [or she] demonstrates to the satisfaction of the department that he or she is able to work, available for work and is pursuing a course of action reasonably designed to result in prompt reemployment in suitable work."

*5. Attorneys' fees.*

██ Our disposition obviates plaintiff's contention on cross-appeal that the trial court erred by denying its postjudgment motion for attorneys' fees. The motion and cross-appeal were premised on plaintiff's status as successful party in the lawsuit. (See, e.g., Code Civ. Proc., § 1021.5.) Plaintiff's briefs do not argue that fees may be awarded to a party whose favorable result in the trial court has been overturned on appeal.

The judgment is reversed. The order denying plaintiff's motion for attorneys' fees is affirmed.

Bird, C. J., Tobriner, J., and Mosk, J., concurred.

**RICHARDSON, J.**—I concur in the result reached by the majority. However, I believe that once the majority has determined that the scope of review under section 409.2 of the Unemployment Insurance Code (all statutory references are to this code) is limited to issues of law which cannot, as a matter of due process, affect the previously adjudicated rights of the parties to the underlying controversy, all subsequent discussion of Carroll's compliance with seek-work instructions unnecessarily examines the trial court's factual findings. Under the standard expressed in part I of the majority opinion, in my view the correctness of the board's ruling on the facts need not be reviewed.

I further concur in the majority's conclusion that a claimant is entitled to rely on the specific "course of action" recommended by the EDD "[w]hen the EDD is better situated than the claimant to know 'customary methods of obtaining work . . . and the current condition of the labor market.'" (*Ante*, p. 112.) I emphasize, however, that it is not my understanding that the majority holds, because it is not at issue, that the EDD in all cases must prescribe a detailed seek-work plan for all claimants. In some instances, a claimant's superior knowledge of the employment market may place a heavier burden on such claimant to use his initiative in seeking work.

In summary, the case before us does not present the questions—what constitutes (1) adequate "specific and reasonable instructions" by the EDD, or (2) adequate compliance with such instructions by all claimants, who must make "all reasonable effort to secure employment on

their own behalf"? (§ 100.) In my view, the majority correctly holds that there is no independent "seek-work" requirement imposed on claimant under subdivision (c), which is greater than the requirements expressed in subdivision (e) of section 1253, and with that holding I concur.

Clark, J., concurred.