[Civ. No. 33383. Fourth Dist., Div. Two. Dec. 13, 1984.]

J. R. NORTON COMPANY, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO et al.,
Real Parties in Interest.

COUNSEL

Dressler, Quesenbery, Laws & Barsamian and Larry A. Dawson for Petitioner.

Manuel M. Medeiros, Daniel G. Stone and Cathy Christian for Respondent.

Dianna Lyons, Daniel A. Garcia and Wendy Sones for Real Party in Interest.

OPINION

**RICKLES, J.**—Petitioner J. R. Norton Company (Norton) seeks review of a final order of the Agricultural Labor Relations Board (Board) finding Nor-

ton's repudiation of the unlawful interrogation of two employees inadequate and ordering certain remedies.

## FACTS

The facts concerning the unfair labor practices are essentially undisputed; therefore, we adopt the facts as set forth by the Board.

"The events at issue herein took place during the early part of 1982 at J. R. Norton's Fillaree Ranch in the Imperial Valley of California. In January or February of 1982, after Norton employee Casey Flores told his supervisor, David (Buddy) Micalizio, that the company was making a lot of money but the workers were not, Micalizio asked Flores how he felt about the union. Flores replied that he supported the union. (Fn. omitted.) In March of 1982, Micalizio told Flores that a particular union supporter—an employee named Guadalupe Gonzales—was causing problems and that the company would have to get rid of him. Flores defended Gonzales, and Micalizio angrily responded by asking Flores if he was 'for the company or for the men.' Flores answered that he was for the men.

"In late March 1982, during a lunchbreak, Micalizio observed employee Benjamin Hernandez being asked to sign a union petition by Guadalupe Gonzales. At the close of the work day, Micalizio asked Hernandez what Gonzales had wanted. When Hernandez responded that he had been asked to sign 'a paper form to help him out with his union,' Micalizio asked Hernandez if he had signed it. Hernandez replied that he had. Micalizio then said, 'I told that guy not to be bothering my tractor drivers.'"

The unfair labor practice charges relating to these three incidents were personally served on Norton on April 30, 1982, and filed with the Board on May 3, 1982. Norton mailed its letter of repudiation to its employees on May 14, 1982.

## PROCEDURAL POSTURE

The administrative law judge (ALJ) and the Board found one of Norton's foremen had violated Labor Code section 1153, subdivision (a), by unlawfully interrogating two Norton employees at Rancho Fillaree.

Norton does not dispute this finding. Norton, in an effort to mitigate the effect of the unlawful interrogation, mailed a notice repudiating the action of this foreman in unlawfully interrogating its employees.[1]

The ALJ, utilizing the criteria in *Passavant Memorial Area Hosp.* (1978) 237 NLRB 138, 98 LRRM 1492, found that Norton "sufficiently repudiated its conduct by sending a letter to each of its employees indicating that no harm was intended and that the company did not condone any threats made to the employees. . . ."

The Board, in a three-to-two decision, reversed the ALJ's finding that Norton's notice met the *Passavant* criteria. Instead, the Board found that this notice: (1) was ambiguous and did not specifically identify the nature of the unlawful conduct; (2) did not repudiate or disavow the unlawful conduct; (3) did not assure the employees that Norton would not interfere with their Labor Code section 1152 rights in the future; (4) was not adequately published or disseminated to the employees; and (5) was not timely.

The Board then ordered Norton, among other things, to mail and post copies of a notice prepared by the Board to all of Norton's Rancho Fillaree employees.[2]

---

[1]The notice stated: "NOTICE TO ALL WORKERS OF RANCHO FILLAREE

"This notice is to inform all workers that they have certain rights under California law. The Agricultural Labor Relations Board gives farm workers the following rights.

"1) The right to organize themselves.

"2) The right to form, join, or help the union.

"3) The right to bargain as a group and choose someone to speak for them.

"4) To act together with other workers to try to get a contract or to protect one another.

"5) To decide not to do any of these things.

"If any worker believes that he has been threatened or mistreated for having exercised his legal rights, J. R. Norton Company wants to inform all workers and employees of Rancho Fillaree that they do not condone threatening any worker for having exercised his legal rights.

"During the last few months, two supervisor foremen started working at Rancho Fillaree. If either of these men gave you the impression that they were talking with the workers about their legal rights, no wrong was intentionally being committed against the employees. If something like that happened, it was due to the foreman's or supervisor's inexperience (in dealing with)* the Act of the Agricultural Labor Relations Board.

"The foremen and supervisors have already been informed that the workers have these rights under the Act of the Agricultural Labor Relations Board. Supervisors and foremen assign, suspend, hire, and fire the employees of Rancho Fillaree without any relation to the lawful actions of any worker.**

"

"Bob Micalizio                                                    Buddy Micalizio

"*The Spanish, 'en tralando con,' contains a misspelling. Our best guess is that the Spanish would be 'en tratando con,' which means 'in dealing with.'

"**Alternate translation: 'the legal activity of any worker.'"

[2]The notice prepared by the Board stated:

"NOTICE TO AGRICULTURAL EMPLOYEES

We are thus presented with a single issue to review: Was the letter mailed by Norton to its employees adequate to repudiate the unlawful interrogation of the two Norton employees by a Norton supervisor?

## DISCUSSION

In this case of first impression, the Board adopted the National Labor Relations Board's (NLRB) precedent allowing an employer to assert repudiation as an affirmative defense to alleged violations of the Agricultural Labor Relations Act (ALRA). The Board then adopted the holding of the NLRB in *Passavant, supra,* as the "minimum criteria for effective employer disavowals of unlawful conduct." ■ The determination to apply the NLRB precedent of repudiation and the standards to be used in applying this precedent are matters of policy lying primarily in the informed discretion of the Board. Because of the Board's expertise, its determination and interpretation of the policies it enforces are entitled to great weight unless clearly erroneous. Courts may not substitute their judgment for that of the Board on matters within the Board's discretion. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244], *Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 28; 29 [173 Cal.Rptr. 856].)

---

"After investigating charges that were filed in the El Centro Regional Office of the Agricultural Labor Relations Board, the Regional Director issued a complaint which alleged that we, J. R. Norton Company, had violated the law. After a hearing at which each side had an opportunity to present evidence, the Agricultural Labor Relations Board (Board) found that we did violate the law by questioning Benjamin Hernandez and Casey Flores, two agricultural employees, about their union activities or sympathies and other protected concerted activities. The Board has told us to post and publish this Notice. We will do what the Board has ordered us to do.

"We want to tell you that the Agricultural Labor Relations Act is a law that gives you and all farm workers in California these rights:

"1. To organize yourselves;

"2. To form, join, or help unions;

"3. To vote in a secret ballot election to decide whether you want a union to represent you.

"4. To bargain with your employer about your wages and working conditions through a union chosen by a majority of the employees and certified by the Board;

"5. To act together with other workers to help and protect one another; and

"6. To decide not to do any of these things.

"Because it is true that you have these rights, we promise that:

"We will NOT ask our employees about their union activities or sympathies.

"Dated:                                    J. R. NORTON COMPANY

By:_____

(Representative)                  (Title)

"If you have a question about your rights as farm workers or about this Notice, you may contact any office of the Agricultural Labor Relations Board. One office is located at 319 Waterman Avenue, El Centro, California 92243. The telephone number is (619) 353-2130.

"This is an official Notice of the Agricultural Labor Relations Board, an agency of the State of California."

■ The Board recognized, as do we, that the policy of the ALRA to insure peace in the fields is promoted by employers' repudiation of unlawful conduct. Voluntary action by employers should be encouraged by construing any attempt at repudiation liberally.

■ With these principles in mind, we return to the original question posed: Does the letter of repudiation by Norton comport with the minimum criteria set out in *Passavant*? Measuring the goals to be achieved and the circumstances surrounding Norton's repudiation against the minimum criteria of *Passavant* provides the answer.

On April 30, 1982, Norton was charged with three instances of unlawful interrogation resulting from comments made by foreman David (Buddy) Micalizio to Flores on two occasions in February and March 1982, and Hernandez on one occasion in March of 1982. Norton's letter to its employees on May 14, 1982, was designed to repudiate these specific instances of unlawful conduct.

Norton's repudiation having set the stage we need only supply the background scenery of *Passavant* to begin our analysis. "It is settled that under certain circumstances an employer may relieve himself of liability for unlawful conduct by repudiating the conduct. To be effective, however, such repudiation must be 'timely,' 'unambiguous,' 'specific in nature to the coercive conduct,' and 'free from other proscribed illegal conduct.' *Douglas Division, The Scott & Fetzer Company,* 228 NLRB 1016, 95 LRRM 1039 (1977), and cases cited therein at 1024. Furthermore, there must be adequate publication of the repudiation to the employees involved and there must be no proscribed conduct on the employer's part after the publication. *Pope Maintenance Corporation,* 228 NLRB 326, 340, 96 LRRM 1186 (1977). And, finally, the Board has pointed out that such repudiation or disavowal of coercive conduct should give assurances to employees that in the future their employer will not interfere with the exercise of their Section 7 rights. . . ." (*Passavant, supra,* 98 LRRM 1942, 1943.)

Applying these criteria to Norton's letter of repudiation, we find it has failed to meet its burden of establishing that it effectively disavowed or otherwise repudiated the unlawful conduct.

First, it is ambiguous in that it does not specifically identify the nature of the alleged unlawful conduct. The letter indicates: "If any worker believes that he has been threatened or mistreated for having exercised his legal rights, J. R. Norton Company wants to inform all workers and employees of Rancho Fillaree that they do not condone threatening any worker for

having exercised his legal rights." This language allows the employees to speculate as to what conduct Norton does not condone. This speculation is heightened by the passage of time between the conduct and the repudiation and mandates an increased need for specificity. Norton has the duty to affirmatively establish repudiation of the specific unlawful conduct and could easily have done so by identifying the unlawful conduct as interrogation. This is particularly true where the knowledge of the alleged unlawful conduct is in its possession.

Second, Norton's reference to two new supervisors compounded the problem by utilizing this language: ". . . If either of these men gave you the impression that they were talking with the workers about their legal rights, no wrong was intentionally being committed against the employees. If something like that happened, it was due to the foreman's or supervisor's inexperience . . . ." An employee reading this language could only conclude Norton had done no wrong.

*Passavant* indicates the NLRB would require the employer to admit wrongdoing. The Board recognized this requirement would be unfair and did not adopt it because litigation was pending. The Board did, however, adopt the requirement that an employer could not affirmatively deny liability.

Norton could have repudiated the unlawful conduct of its foreman without admitting liability. Norton made the choice to inferentially deny responsibility.

Third, and finally, Norton's letter totally fails to assure its employees that future interference with the exercise of their Labor Code section 1152 rights will not be tolerated. The NLRB has consistently required that an employer assure its employees it will not interfere with their protected rights in the future. Specific future assurances by employers is one of the most important acts in effective repudiation. (*Broyhill Company* (1982) 260 NLRB 1366, 109 LRRM 1314, 1315; *Robertshaw Controls Company* (1982) 263 NLRB 958, 111 LRRM 1182, 1185.) Norton cannot meet this requirement by advising its employees, foreman, and supervisor, of the employees' protected rights under the ALRA. A mere advisement of protected rights contains no assurance against future interference with such rights. Norton has again failed to supply the missing ingredient of effective repudiation by a simple statement "We will not interfere with our employees' protected rights under the ALRA in the future."

Having determined Norton failed to meet its burden of establishing it effectively disavowed or otherwise repudiated the unlawful conduct, we

need not address the procedural problems of publication and timeliness of Norton's notice to employees.

The Board's decision is affirmed.

Morris, P. J., and Kaufman, J., concurred.