[S.F. No. 23811. Feb. 28, 1979.]

MARVIN R. GLICK, as Director, etc., Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
ENID G. BALLANTYNE, Real Party in Interest and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, N. Eugene Hill and John J. Klee, Jr., Assistant Attorneys General, Thomas E. Warriner, Edmund E. White,

Elisabeth C. Brandt and Jerold A. Prod, Deputy Attorneys General, for Plaintiff and Appellant.

Ronald A. Zumbrun, John H. Findley and Sandra R. Johnson as Amici Curiae on behalf of Plaintiff and Appellant.

Robert W. Bryant and Thomas L. Sapunor, Jr., for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

**TOBRINER, Acting C. J.**—This case presents the issue whether under section 1253, subdivision (c), of the Unemployment Insurance Code an applicant who is ready and willing to work, but whose status as a student necessarily curtails her availability for work, is eligible for unemployment benefits.[1] Section 1253, subdivision (c), provides that an unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if he is "able to work and available for work" for that week.

In the instant case, the California Unemployment Insurance Appeals Board concluded that the claimant satisfied this statutory requirement for eligibility by demonstrating her availability for work in a potential employment field. The trial court affirmed. The Director of the California Employment Development Department now seeks review of the board's decision, contending that because the restrictions which the claimant "voluntarily" imposed upon herself materially reduced the labor market

---

[1]Section 1253 provides in full: "An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that:

"(a) A claim for benefits with respect to that week has been made in accordance with authorized regulations.

"(b) He has registered for work, and thereafter continued to report, at a public employment office or such other place as the director may approve. Either or both of the requirements of this subdivision may be waived or altered by authorized regulation as to partially employed individuals attached to regular jobs.

"(c) He was able to work and available for work for that week.

"(d) He has been unemployed for a waiting period of one week as defined in Section 1254.

"(e) He conducted a search for suitable work in accordance with specific and reasonable instructions of a public employment office."

available to her, she is ineligible for unemployment benefits. As we shall explain, however, we reject the director's contention.

Claimant Enid G. Ballantyne's testimony at an administrative hearing establishes the details of her extensive employment history. From 1968 to 1970 Ballantyne worked full time as a service representative. Thereafter, because she was caring for her three small children, Ballantyne restricted her employment to part-time and intermittent day and night work at a department store.

In 1973 Ballantyne began attending college full time after separating from her husband. Needing "more stable employment," she went to work at a movie theater as assistant manager and night cashier. Ballantyne worked an average of 30 hours per week, from 6 p.m. until 1 a.m., at the theater until it closed in April 1974. Meanwhile, in March 1974 Ballantyne began work for the Pasadena Unified School District administering and evaluating tests; Ballantyne worked 20 hours per week there for four months.

In July 1974 Ballantyne ceased working for the school district and accepted a secretarial job with the Los Angeles Times. She worked four days a week, approximately 25 to 30 hours per week, "from 6 in the morning until whenever I was let go." In March 1975 Ballantyne, through no fault of her own, lost this employment and began receiving unemployment insurance benefits.

In September 1975 Ballantyne entered law school at the University of California at Los Angeles. She attended classes Monday through Friday, at varying hours, and studied four hours each day.[2] When her employment office asked her in a written questionnaire, "If offered work that conflicts with the hours you are attending school, what provisions could you make to take such work?" Ballantyne answered "none." The department thereupon found her "not available for work" and ineligible for continued benefits.

Ballantyne pursued an administrative appeal from this determination, and at the hearing testified as to the above stated facts of her employment history. At the time of the hearing itself Ballantyne was earning $5 an hour for two hours each week as a private tutor; moreover, she was

---

[2]During her first quarter of law school, Ballantyne attended classes from 9 a.m. to 2 p.m. on Monday and Tuesday, 10 a.m. to 4 p.m. on Wednesday, and 11 a.m. to 4 p.m. on Thursday and Friday.

preparing to begin weekend work as a credit checker. Ballantyne explained that although she would not be willing to forego schooling for a full-time job, she had been searching for work "in no special field," and had not limited her search to weekend or night work.

Aside from Ballantyne's own testimony, the only other evidence received at the hearing concerned the size of the potential market for labor within Ballantyne's time restrictions. A department representative testified that "The labor market is extremely small regardless of what she does for a living. There are just too many people out of work and there is very little night work now."

In affirming the department's denial of benefits, the administrative law judge declared that claimant had "restricted her availability to evening and weekend work" and thus "substantially removed herself from the labor market." Accordingly, the judge concluded that claimant was "not available for employment within the meaning of code Section 1253(c)."

On claimant's appeal, however, the board reversed the judge's decision. (Precedent Benefit Dec. P-B-313 (1976).) As the board stated, "Restric[t]ing acceptable work to part-time hours does not necessarily result in a finding that the claimant has withdrawn from the labor market and thus is not available for work . . . ." Moreover, the board pointed out, "the test of availability may not be predicated upon the lack of openings for a claimant, but rather must be based upon whether there is a potential employment field." Because the record demonstrated that a labor market, although small, did exist for Ballantyne, the board concluded that claimant had successfully overcome any inference of unavailability. The superior court upheld the board on the ground that "here the applicant continues to make herself available for precisely the work with which she earned her unemployment credits."

We recently examined the concept of availability for work in *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55 [141 Cal.Rptr. 146, 569 P.2d 740]. In that case, claimant Sanchez applied for unemployment insurance benefits when her employment as a restaurant waitress was terminated. She informed the department that she could not accept work on either Saturdays or Sundays because on those days she was required to care for her four-year-old son. Nevertheless, she was ready to accept either restaurant or factory work during the week when her sister-in-law was available to tend the child, and she imposed no time restrictions on such weekday work. The board concluded, however, that Sanchez was

not "able to work and available for work" within the meaning of section 1253 of the code, in that her self-imposed exclusion from weekend employment eliminated a "major portion of her labor market" as a waitress, and therefore denied her benefits.

In our decision reversing the board's ruling, we recognized that the requirement of section 1253 was intimately related to the code's penalties for rejection of offers of "suitable work" without "good cause." "While the requirement that an applicant for unemployment benefits be 'able to work and available for work' establishes a prerequisite to eligibility for any benefits, the code also provides a temporary disqualification from eligibility for an individual who 'without good cause, refused to accept suitable employment when offered to him, or failed to apply for suitable employment when notified by a public employment office.' (§ 1257, subd. (b).)" (*Sanchez* v. *Unemployment Ins. Appeals Bd., supra,* 20 Cal.3d 55, 61.) We concluded that "[t]he combined effect of those sections is to allow a claimant to refuse, without risk of disqualification, work which is either unsuitable or which the claimant has other 'good cause' to refuse." (*Id.,* at p. 62.)

Nevertheless, we did not find the availability requirement satisfied "merely by a willingness to accept all such 'non-refusable' work." (20 Cal.3d at p. 65.) Rather, because the policy underlying availability "normally entails accessibility to work for which there is some social demand," we held that "a second element of the inquiry into availability consists of the determination whether, after a claimant has restricted his market to 'suitable work which he has no good cause for refusing,' he remains available for work for which there is a substantial field of potential employers." (*Id.*) ■ Thus we concluded that " '[a]vailability for work' within the meaning of section 1253, subdivision (c), requires no more than (1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment." (Fn. omitted.) (*Id.,* at p. 67.)

Applying this availability standard to the facts before us we found in *Sanchez* that "a claimant who is a parent or guardian of a minor has 'good cause' for refusing employment which conflicts with parental activities reasonably necessary for the care or education of the minor if there exist no reasonable alternative means of discharging those responsibilities." (Fn. omitted.) (20 Cal.3d at p. 70.) Furthermore, we explained that by requiring claimant Sanchez to make herself available to a

substantial field of employment we did not mean "to foreclose the possibility that even if an employment field is not large in absolute terms, it may nevertheless satisfy the availability requirement if it presents a substantial employment opportunity" for the claimant. (*Id.,* at p. 67, fn. 11.) In light of the board's failure to apply these correct criteria of availability, we remanded the case to the board for further proceedings.

Thus *Sanchez* establishes the two-prong inquiry which we must follow in the present case to determine claimant Ballantyne's availability for work within the meaning of section 1253, subdivision (c). We turn first to the question whether claimant's status as a student provides good cause such that she may refuse suitable work during her school hours without risk of disqualification for unemployment insurance benefits.

1. ██ *Claimant, a law student, has "good cause" for not accepting work which would conflict with the requirements of her schooling.*

In *Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 529 [7 Cal.Rptr. 97, 354 P.2d 625], we asserted that "the term 'good cause' as used in the statute means an adequate cause, a cause that comports with the purposes of the Unemployment Insurance Code and with other laws." Thus we held in *Sanchez* that the duties of parenthood provide "good cause" for refusing work which would conflict with the performance of those duties: "Because of the crucial importance of parental responsibility and supervision, it would be anomalous if the Legislature intended that the obligation of the prospective claimant of unemployment benefits to accept work be irreconcilable with the duties of parenthood." (20 Cal.3d 55, 69.)

In the present case claimant Ballantyne seeks unemployment benefits although she does not accept employment which would conflict with the requirements of a full-time law student. Given the "indispensable role which education plays in the modern industrial state" (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 605 [96 Cal.Rptr. 601, 487 P.2d 1241]), we cannot impose upon Ballantyne the Hobson's choice of the neglect of her professional education or the sacrifice of entitlement to benefits. Indeed, Ballantyne's full-time attendance at school comports ideally with the purposes of the Unemployment Insurance Code to provide benefits to persons unemployed through no fault of their own, and to reduce involuntary unemployment to a minimum (Unemp. Ins. Code, § 100). Ballantyne's training in law school will enable her most effectively to alleviate the hardships of involuntary unemployment, which she has

suffered in the past, as well as to avoid the recurrence of such hardships in the future. We therefore affirm the trial court's holding that Ballantyne's status as a student, and the necessary curtailment of availability which that status entails, did not render claimant unavailable for work within the meaning of section 1253.

The director argues, however, that the effect of our ruling that Ballantyne can claim "good cause" for refusing to accept work which would conflict with the necessities of her school attendance is to subvert the unemployment compensation system by utilizing it to subsidize employees' education. The director's argument plainly disregards the explicit coverage of the Unemployment Insurance Code. Section 1253.8 provides that "[a]n unemployed individual shall not be disqualified for eligibility for unemployment compensation benefits solely on the basis that he or she is a student."[3]

The legislative intent underlying this statute is evident: The same test of availability for work must be applied to students as is applied to other applicants for unemployment benefits. In providing that an unemployed individual should not be disqualified "solely on the basis that he or she is a student," the Legislature necessarily established that some limitation on availability does not negate the right to benefits. A student, of course, is not available for employment at all times, but only at such times as do not interfere with the student's studies. Thus student claimants who can show that full-time study does not preclude their availability for work within the meaning of section 1253, subdivision (c), will be eligible to receive unemployment benefits. The present claimant is not entitled to recover *because* she seeks to gain a legal education, but, by the same token, *because* she seeks to gain a legal education she should not be denied benefits. Accordingly, proceeding to the second half of our two-step inquiry, we must determine whether Ballantyne has made herself available to a "substantial field of employment."

2.      *Substantial evidence supports the board's finding that claimant made herself available to a substantial field of employment.*

In *Sanchez* we focused the second portion of our determination of availability on the question whether the claimant had made herself available to a "substantial field of employment." We explained that the

---

[3]Section 1253.8 was enacted in 1975, effective January 1, 1976. (Stats. 1975, ch. 728, § 1, p. 1718.) Although Ballantyne first claimed unemployment benefits prior to the statute's effective date, Ballantyne's right to benefits after January 1, 1976, is also in issue.

availability requirement "is not satisfied merely by a willingness to accept all . . . 'non-refusable' work," but also entails "assuring that a claimant is 'attached to the labor market.' [Citations.]" (20 Cal.3d 55, 65.) Thus we prescribed a second element of the inquiry into availability: after the claimant has restricted her market to "suitable work which she has no good cause for refusing," does she remain available for work for which there is a *substantial* field of potential employers?

In describing this second inquiry we broadly defined the requisite "substantial field" of potential employers. Thus we stated that "[t]he term 'field' is used to avoid any implication that the measure of availability is necessarily the likelihood of employment in a given market." (20 Cal.3d at p. 67, fn. 11.) Indeed we cited with approval the very statement of the board in the present case that " 'the test of availability may not be predicated upon the lack of openings for a claimant, but rather must be based upon whether there is a potential employment field.' " (*Id.*)[4] At the same time, we noted that our use of the "qualifying term 'substantial' is not meant to foreclose the possibility that even if an employment field is not large in absolute terms, it may nevertheless satisfy the availability requirement if it presents a substantial employment opportunity for a claimant." (*Id.,* at pp. 66-67, fn. 11.)[5]

In order to illustrate the requirements of section 1253, we referred in *Sanchez* once again to the *decision of the board in the instant case.* As we stated, "The board's own [decision in Precedent Benefit Decision P-B-313] . . . sharply delineate[s] the outlines of th[e] two-step inquiry [appropriate to a determination of availability]. . . . [In that decision] the *board has approved the eligibility of a student who restricted her availability to such work as would not 'interrupt her attendance at school,'* noting that 'a labor market, although small, does exist for the claimant.' " (Italics added.) (20 Cal.3d at pp. 65-66.) Thus, relying on the finding of the board in the present case that claimant Ballantyne is available to a substantial number of employers, we established in *Sanchez* that the requirement of

---

[4]As one commentator has noted, the requirement of availability to a general labor market "does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them." (Freeman, *Able to Work and Available for Work* (1945) 55 Yale L.J. 123, 124.)

[5]In *Sanchez* we were careful to express no opinion as to whether a claimant might be "available for work" within the meaning of the statute, despite the fact that he either is not available for all suitable work which he has no good cause for refusing or is not available to a substantial field of employment. (See 20 Cal.3d 55, 68, fn. 11.) As we explain, claimant Ballantyne presents neither case.

availability does not preclude claimants from placing *some* restrictions on their availability to accept employment, as long as they remain available for employment by a more than minimal number of employers in the community. We noted in *Sanchez* that this rule applied to a student.

■ Our function here as an appellate court is to determine whether, under applicable principles of law, substantial evidence supports the trial court's finding. (*Rubino* v. *Unemployment Ins. Apps. Bd.* (1972) 8 Cal.3d 405 [105 Cal.Rptr. 158, 503 P.2d 614]; *Cooperman* v. *Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 7 [122 Cal.Rptr. 127]; Code Civ. Proc., § 1094.5, subd. (c).) After reviewing the undisputed evidence before it, the trial court in the instant case upheld the board's conclusion, finding that claimant "is in a labor market where some demand exists for the services . . . she offers." Since a review of Ballantyne's employment history reveals substantial evidence to support the trial court's finding that claimant is available to work in an employment field of sufficient dimension, we affirm the trial court decision.[6]

Claimant's own testimony at the hearing justifies the conclusion that she is available to a substantial number of potential employers in Los Angeles. As she stated, "I have been a student since 1973, and I have worked—let's see—as a cashier in a movie theater. [¶] I have worked for the Pasadena Unified School District. I have worked for Pasadena City College and then I went to work for the Los Angeles Times. [¶] All of this time, I was taking care of three children and attending school full time." She also testified that between 1970 and 1975 she worked at Bullocks department store between 9 a.m. and 9 p.m., or on weekends, depending on the store's needs. She was assistant manager and cashier at a movie theater from 6 p.m. to 1 a.m.

This evidence shows that claimant could indeed balance full-time law school attendance—which allowed her to leave school as early as 2 p.m. two days a week and arrive as late as 11 a.m. two other days—with a *substantial* array of suitable employment. Her movie theater work is obviously completely compatible with the restrictions imposed by the law school, and her longest job—working at Bullocks—could easily be arranged around a law school program. In light of this concrete evidence indicating claimant's availability to a substantial number of potential employers, the trial court correctly held that Ballantyne was available for work within the meaning of section 1253.

[6]At the same time, we note the board's decision in Precedent Benefit Decision P-B-313 (1976); the board is, of course, required to apply that precedent in accord with this opinion. (Unemp. Ins. Code, §§ 409, 409.1.)

We conclude that claimant has established that she is available for work for which there is a substantial field of potential employers. She has adduced substantial evidence to sustain that proposition. We recognize that availability for a negligible, insignificant labor market will not suffice; the claimant, however, has shown in this case, and future claimants must show, availability for work in a substantial field of potential employers.

In spite of the undisputed evidence that the potential field of employment open to claimant is substantial, the director argues that three of claimant's four most recent jobs required her to work hours which she now does not have available. The director points out that the overwhelming portion of the market for the clerical and administrative skills which Ballantyne possesses is tied directly to the daytime, weekday schedule of the business world. Nevertheless, this emphasis on the circumstances of claimant's most recent jobs conflicts with our statement in *Sanchez* that "The purpose of the availability requirement is to insure a willingness to accept suitable work, *not to tie a claimant to a previous occupation.*" (Italics added.) (20 Cal.3d at p. 71, fn. 17.)

The assertion that Ballantyne is unavailable during the hours normally worked in her field of employment additionally overlooks our refusal in *Sanchez* to "[import] into the statutory measure of availability an extraneous concept of 'customary, normal, or ordinary' work schedules." (*Id.,* at p. 67.) The director's reliance on the fact that Ballantyne has previously worked in large measure during daytime business hours produces precisely the consequence that we proscribed in *Sanchez*: it seeks to tie Ballantyne to her prior administrative occupation; it ignores her employment as a night cashier and evening saleswoman, jobs for which Ballantyne remains available.[7]

■ Moreover, we held in *Sanchez* that the burden of proof is on the *department* to show that no substantial field of employment remains open

---

[7]We note that, contrary to the director's suggestion, the Unemployment Insurance Code does not restrict eligibility for unemployment benefits to claimants with "full-time" employment histories, nor does the code require that a claimant remain available for "full-time" employment in order to receive benefits. Section 1253 merely provides, as we have seen, that an unemployed individual is eligible to receive unemployment compensation benefits if he is available for "work." (Unemp. Ins. Code, § 1253, subd. (c).) Benefit awards based upon earnings in part-time employment are ordinarily lower in amount than those based upon full-time employment (see *id.,* §§ 1279-1280), and the Department of Human Resources Development has promulgated regulations governing the determination of benefits for claimants "working on a part-time or reduced earnings basis." (See Cal. Admin. Code, tit. 22, § 1326-1 et seq.)

to a claimant before denying benefits: "once a claimant has shown he is available for suitable work which he has no good cause for refusing, the burden of proof on the issue of whether he is available to a 'substantial field of employment' lies with the department. If the department believes that a given claimant, despite his availability for such suitable work, is nevertheless not attached to a labor market of sufficient dimension, it may be expected to explain its position and support it with appropriate evidence." (Fn. omitted.) (20 Cal.3d at p. 71.)

The department makes no such showing here. We have noted that one witness for the department testified that there "is very little night work now." Surely this one statement does not meet the burden of establishing that claimant is not attached to a labor market of sufficient dimension, especially in light of claimant's undisputed testimony that she was willing to accept work on weekends and during the day.

We fully recognize the director's very real concern that unemployment insurance should not be available to students who take summer jobs and then quit them for the purpose of attaining eligibility. The award of benefits in this case would not even indirectly sanction such a practice.[8] Adequate provisions in the code and case law presently prohibit the award of benefits to claimants who leave their jobs voluntarily or are discharged for good cause.[9] Only claimants who can show, as Ballantyne

[8]As the present trial court stressed, "This case is *not* about an applicant for benefits, who is in fact a full-time student during regular school semesters who works between sessions leaving work to return to school. This case is *not* about an applicant who quit employment to return to school, whether full or part-time, and this case is *not* about an applicant who is in fact a full-time student seeking unemployment benefits. [Fn. omitted.] On the contrary, this is a case involving an applicant who has for a period of over 10 years been *both* a student and employee, has earned all the unemployment benefit credits claimed here as a part-time employee, and whose employment was terminated wholly without relationship to her school status." (Original italics.)

[9]Section 1256 of the Unemployment Insurance Code provides in part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work." Thus the court in *Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332 [108 Cal.Rptr. 167] denied benefits to a student who quit work to attend school. The court held that "quitting a job to attend school, no matter how personally commendable the step may be, is [not] an imperative and compelling reason of such magnitude as to render the claimant eligible for unemployment benefits, at least in the absence of explicit legislative authority. If this were good cause within the meaning of section 1256, untold numbers of persons could quit their jobs to attend school while receiving unemployment compensation benefits. . . . [W]e find nothing in the unemployment insurance law to sanction this objective." (32 Cal.App.3d at p. 337.) The board in the instant case properly distinguished *Perales* on the ground that the present claimant did not leave work voluntarily.

has shown, that full-time study does not preclude them from working will be eligible for unemployment benefits.

To deny benefits to the present claimant because the danger that unworthy applicants will take unfair advantage of the unemployment insurance system is to succumb to unfounded fear. As we noted in breaking new ground in tort law, "Legal history shows that artificial islands of exceptions, created from the fear that the legal process will not work, usually do not withstand the waves of reality and, in time, descend into oblivion." (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 747 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) We concluded in *Dillon*: "We do not believe that the fear that we cannot successfully adjudicate future cases of this sort, pursuant to the suggested guidelines, should bar recovery in an otherwise meritorious cause." (*Id.,* at pp. 743-744.) Surely the fear of improper or fraudulent claims in the context of unemployment insurance is no more compelling than in the general context of the law of torts.

In the present case the California Unemployment Insurance Appeals Board concluded that claimant Ballantyne was both able to work and available for work within the meaning of section 1253, subdivision (c). Substantial evidence supports the trial court's decision affirming the board's determination. In light of the guidelines which we established in *Sanchez* v. *Unemployment Ins. Appeals Bd., supra,* we must affirm the decision of the trial court.

The judgment is affirmed.

Mosk, J., Richardson, J., Manuel, J., Newman, J., and Taylor, J.,* concurred.

**CLARK, J.**—I dissent.

Is a person who devotes 46 hours per week to law studies, keeps an irregular and inflexible schedule, maintains a home, and cares for three children "available for work" within the statutory definition? By answering yes, the majority reduce to a nullity the "availability for work" requirement of Unemployment Insurance Code section 1253, subdivision (c).

Although the majority set forth claimant's school requirements, they refuse to give full effect to them. During her first quarter of law school,

---

*Assigned by the Acting Chairperson of the Judicial Council.

she attended classes from 9 a.m. to 2 p.m. on Monday and Tuesday, 10 a.m. to 4 p.m. on Wednesday, and 11 a.m. to 4 p.m. on Thursday and Friday. She studied four hours a day. Her law school activities required more of her than the ordinary full time worker spends on the job. In addition to her schooling, claimant has time burdens of transportation, caring for herself, and maintaining her three children. While claimant had worked part-time during undergraduate school, there is nothing to indicate the school time burdens were nearly so great as her present law school burdens.

The claimant stated that if offered a full-time job she would not be willing to forego her schooling in order to accept unless paid at least $1,000 per month. Obviously, claimants should not be able to remain eligible while rejecting all jobs paying less than $1,000 per month.

Given the claimant's responsibilities and undertakings apart from employment, it is obvious that accepting substantial employment would be a herculean undertaking. In the circumstances, there is no basis for a finding that she was "available for work" within the meaning of Unemployment Insurance Code section 1253, subdivision (c). The instant case differs substantially from *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55 [141 Cal.Rptr. 146, 569 P.2d 740], where the claimant's family duties rendered her unable to work on Saturdays and Sundays. There is substantial difference in the limited unavailability in *Sanchez* compared to the unavailability in the instant case.

Awarding benefits in the instant case and others like it means employers must effectively subsidize education. This is not the function of the Unemployment Compensation Act. The statute "is fundamentally designed to act as a buffer or hedge against the ravages of sudden and unexpected loss of one's livelihood." (*Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439 [120 Cal.Rptr. 855].) The program is not one funded out of general taxes but through compulsory contributions by employers.

In an attempt to minimize the employer subsidization of education, the majority assert that granting the present claim does not require equal treatment for the typical student worker whose summertime employment terminates each fall with the start of classes. Yet, if anything, just the opposite should ordinarily be true. The typical student is much more "available for work" than the present claimant. Relatively few students must set aside as much as 46 hours per week for study commitments. Few

have undertaken the additional child care and home responsibilities the present claimant has. As such students who wish to work are far more "available for work" during the school term than the present claimant, fairness would seem to require they be eligible for benefits if claimant is.

Moreover, today's decision can only make it more difficult for students to secure part-time employment. Because employers are required to provide the benefits, they will be reluctant to hire either students or potential students. Faced with the choice between hiring students or others, employers can be expected to avoid the disproportionate exposure to increased unemployment insurance contributions.

I would reverse the judgment.