[Civ. No. 59717. Second Dist., Div. Three. May 27, 1981.]

SORAYA GURFINKEL, Plaintiff and Appellant, v.
LOS ANGELES COMMUNITY COLLEGE DISTRICT,
Defendant and Respondent.

**2**

**COUNSEL**

Mary-Lynne Fisher, Arnold I. Siegel and Michael J. Gurfinkel for Plaintiff and Appellant.

Robert J. Henry and Mary L. Dowell for Defendant and Respondent.

Donald L. Reidhaar, Gary Morrison and Lawrence B. Garcia as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Appellant Soraya Gurfinkel (Gurfinkel) appeals from the denial of her petition for writ of mandate in favor of respondent Los Angeles Community College District (College District).

### STATEMENT OF THE CASE

On June 15, 1979, Gurfinkel filed a petition for writ of mandate in superior court seeking classification as a resident for purposes of the payment of tuition at Los Angeles City College (LACC). The petition was denied on September 12, 1979, after which judgment was entered on October 4, 1979.

We believe the judgment of the trial court is proper for reasons hereinafter discussed.

### FACTS

On June 19, 1978, Gurfinkel entered the United States from France with a fiancee visa and married Michael Gurfinkel, a California resident, on July 16, 1978. She applied for admission to LACC on January 2, 1979, registering as a full time student on January 19, 1979, at which time she was classified as a nonresident pursuant to Education Code sections 68018, 68040, subdivision (b) and 68050.[1]

### CONTENTIONS

Gurfinkel contends that the trial court erred in denying her petition as the durational residency requirement for tuition purposes set forth in Education Code sections 68018, 68040, 68050, 68071, 76140, 89705, and California Administrative Code, title 5, section 54001, constitutes (1) an unconstitutional burden on the fundamental right to a college and community college education under *Serrano v. Priest* (1971) 5

---

[1]Education Code section 68040, subdivision (b) provides: "Each student shall be classified as: ... (b) a district resident, nondistrict resident or nonresident at a California community college."

Education Code section 68018 provides: "A 'nonresident' is a student who does not have residence in the state for more than one year immediately preceding the residence determination date."

Education Code section 68050 provides: "A student classified as a nonresident shall be required, except as otherwise provided in this part, to pay, in addition to other fees required by the institution, nonresident tuition."

Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241], which case tacitly overruled the contrary holding in *Kirk* v. *Regents of University of California* (1969) 273 Cal.App.2d 430 [78 Cal.Rptr. 260]; (2) an unconstitutional restriction on the fundamental right to travel; and (3) an irrebutable presumption of nonresidency which serves to deny her access to higher education.

### DISCUSSION

■ Gurfinkel's position herein is contingent upon the unfounded premise that the fundamental right to education articulated in *Serrano* v. *Priest, supra*, 5 Cal.3d 584 (hereinafter *Serrano I*)[2] encompassed a fundamental right to college and/or community college education, thereby tacitly overruling *Kirk* v. *Regents of University of California, supra*, 273 Cal.App.2d 430, which found no such fundamental interest.

In *Serrano I*, the court held that the California school financing system invidiously discriminated against the poor as it made "the quality of a child's education a function of the wealth of his parents and neighbors." (*Serrano I*, at p. 589.) In so doing the court declared:

"We are convinced that the distinctive and priceless function of education in our society warrants, indeed compels, our treating it as a 'fundamental interest.'

"First, education is essential in maintaining what several commentators have termed 'free enterprise democracy'—that is, preserving an individual's opportunity to compete successfully in the economic marketplace, despite a disadvantaged background. Accordingly, the public schools of this state are the bright hope for entry of the poor and oppressed into the mainstream of American society.

"Second, education is universally relevant. '. . . Every person . . . benefits from education . . . .' (Fn. omitted.) [Citation.]

"Third, *public education continues over a lengthy period of life— between 10 and 13 years.* Few other government services have such sustained, intensive contact with the recipient.

---

[2]*Serrano I* was upheld on the basis of the California Constitution in *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929] (hereinafter *Serrano II*) after the United States Supreme Court's ruling in *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1 [36 L.Ed.2d 16, 93 S.Ct. 1278], that education was not a fundamental interest under the federal Constitution.

"Fourth, education is unmatched in the extent to which it molds the personality of the youth of society.... [P]ublic education actively attempts to shape a child's personal development in a manner chosen not by the child or his parents but by the state. [Citation.] '[T]he influence of the school is not confined to how well it can teach the disadvantaged child; it also has a significant role to play in shaping the student's emotional and psychological make-up.' [Citation.]

"Finally, education is so important that the state has made it *compulsory*—not only in the requirement of attendance but also by assignment to a particular district and school...." (Fns. omitted, italics added.) (*Id.*, at pp. 608-610.)

In addressing "compulsory" public education continuing over a "10 [to] 13" year period, the court in *Serrano I* clearly was contemplating education ranging from kindergarten through grade 12. Neither college nor community college education is compulsory. While high school ends at grade 12, community colleges are "designed to fit the needs of students of the 13th and 14th grades and may include courses of instruction designed to prepare for admission to the upper division of higher institutions of learning ...." (Ed. Code, § 78201; see Ed. Code, §§ 72244, 72247 and 72248.)

In *Kirk* v. *Regents of University of California, supra*, 273 Cal. App.2d 430, 440, the court, under facts strikingly similar to those in the case before us, fully recognized "the value of higher education," but refused to declare it a fundamental interest.[3] *Kirk* is on all fours with the case before us and therefore controls as to each of Gurfinkel's remaining contentions herein.

---

[3]In arguing for the extension of the fundamental interest in education articulated in *Serrano I* to higher education, Gurfinkel merely asserts that a high school education does not adequately prepare a young person to take a rightful place in society and compete in the job market, without relying on any evidence introduced to that effect before the trial court. Further, Gurfinkel presented no cognizable evidence indicating that individuals with community college educations are better able to compete in the work force. The ascertainment of such data could well be the subject of a legislative fact finding hearing.

Gurfinkel's reliance upon *Glick* v. *Unemployment Ins. Appeals Bd.* (1979) 23 Cal.3d 493 [153 Cal.Rptr. 1, 591 P.2d 24], in her argument in this regard is misplaced. There the court did not address the issue of a fundamental right to higher education, but rather held that the active pursuit of higher education, in that instance a legal education, provided "good cause" under the Unemployment Insurance Code for refusing to "accept employment which would conflict with the requirements of a full-time law student." (*Id.*, at pp. 500-501.)

As the court in *Serrano I* and *Serrano II* did not address itself to *Kirk* or the issue of a fundamental interest in higher education, we do not find that *Kirk* has been overruled sub silentio.

■ Gurfinkel alternatively asserts that the durational residency requirement constitutes an unconstitutional restriction on her fundamental right to travel. However, although dealing with a United States citizen coming to California from Ohio, again *Kirk* v. *Regents of University of California, supra*, 273 Cal.App.2d 430, resolved this precise issue to the contrary.

In the landmark case of *Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], which case the court in *Kirk* discusses, the United States Supreme Court struck down a durational residency requirement for receipt of welfare benefits as an unconstitutional burden on the right to interstate travel. However, in so doing the court specifically did not rule upon "the validity of waiting-period *or* residence requirements determining ... eligibility for tuition-free education .... Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." (*Id.*, at p. 638, fn. 21 [22 L.Ed.2d at p. 617.)

In concluding that California's durational residency requirement did not infringe upon the right to interstate travel as provided for in the United States Constitution, the court in *Kirk* v. *Regents of University of California, supra*, 273 Cal.App.2d 430, 440, noted:

"While we fully recognize the value of higher education, we cannot equate its attainment with food, clothing and shelter. *Shapiro* involved the immediate and pressing need for preservation of life and health of persons unable to live without public assistance, and their dependent children. Thus, the residence requirements in *Shapiro* could cause great suffering and even loss of life. The durational residence requirement for attendance at publicly financed institutions of higher learning do not involve similar risks. Nor was petitioner (unlike the families in *Shapiro*) precluded from the benefit of obtaining higher education. Charging higher tuition fees to nonresident students cannot be equated with granting of basic subsistence to one class of needy residents while denying it to an equally needy class of residents." (Fn. omitted.)

The court then continued:

"As we have concluded that the durational residence requirement here in issue does not infringe on petitioner's fundamental right to travel, it should be judged by ordinary equal protection standards. The applicable criteria are familiar and well established. ■ A legislative measure will be found to deny equal protection only if 'it is without any reasonable basis and therefore is purely arbitrary.' [Citation.] It is not enough that the measure results incidentally 'in some inequality,' or that it is not drawn 'with mathematical nicety;' the statutory classification must instead cause 'different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.' [Citation.]

"Thus, any classification by a state that is not palpably arbitrary and is reasonably based on a substantial difference or distinction is not a violation of the equal protection clause so long as the classification is rationally related to a legitimate state objective or purpose. In this instance, then, we must determine whether the classification of students as residents or nonresidents for the purpose of paying tuition is reasonable and whether that classification is rationally related to a legitimate objective of the State of California." (Fn. omitted.) (*Id.*, at p. 441.)

As the purpose of the durational residency requirement advanced by the regents in *Kirk* is analogous to that set forth by the College District in the case before us, the *Kirk* court's rationale as to the relationship of this objective to the requirement itself is apposite. The court in *Kirk* reasoned:

"The Regents and the Trustees justify the higher tuition fees paid by persons like petitioner who are classified as nonresidents, primarily on the basis that resident students (or their parents) pay taxes to the State of California which, in turn, supports and maintains the university. The higher tuition charged nonresident students tends to distribute more evenly the cost of operating and supporting the University of California between residents and nonresidents attending the university. Although there is no way for this court to determine the degree to which the higher tuition charge equalizes the educational cost of residents and nonresidents, it appears to be a reasonable attempt to achieve a partial cost equalization by collecting lower tuition fees from those persons who, directly or indirectly, have recently made some contribution to the economy of the state through having been employed, having paid taxes,

or having spent money in the state for the brief period of one year prior to their attendance at a publicly financed institution of higher education.

"Thus, as we read *Shapiro v. Thompson*, while the payment of taxes, fiscal integrity and budgetary planning are expressly rejected either as 'traditional equal protection tests' or as 'compelling state interests' that justify the imposition of benefits essential to life and health, they may well be reasonably related to legitimate objectives of the State of California for the purpose of imposing residence conditions on attendance at a university or state college.

"This state has a valid interest in providing tuition-free education to those who have demonstrated by a year's residence a bona fide intention of remaining here and who, by reason of that education, will be prepared to make a greater contribution to the state's economy and future. Accordingly, we hold that the regulation classifying students as residents or nonresidents for tuition purposes is not arbitrary or unreasonable and bears a rational limitation to California's objective and purpose of financing, operating and maintaining its many publicly financed educational institutions of higher learning [citations].

"Residents and nonresidents can be treated differently where there are valid reasons for doing so [citation], and the privileges and immunities clause does not guarantee to petitioner the right to attend the university for the same fee as that charged to persons who have met the one-year residence requirement [citation]." (Fn. omitted.) (*Id.*, at pp. 443-445.)

While we recognize that *Kirk* is 12 years old, its reasoning is as timely now as it was when it was written. Indeed, its timeliness becomes even more apparent in the wake of the financial constraints imposed by Proposition 13 and the resulting diminution of public funds for use in higher education. (See *California Teachers Assn. v. Board of Education* (1980) 109 Cal.App.3d 738 [167 Cal.Rptr. 429], wherein the court refused to create a constitutional right to free district-operated summer school after the summer school program had been substantially limited following the passage of Proposition 13. See also *Jarvis v. Cory* (1980) 28 Cal.3d 562, 573 [170 Cal.Rptr. 11, 620 P.2d 598]; *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 302, 310 [152 Cal.Rptr. 903, 591 P.2d 1]; *Board of Educa-*

*tion* v. *Superior Court* (1979) 93 Cal.App.3d 578, 580 [155 Cal.Rptr. 839].)

The Legislature has designated what fees may be charged by community colleges in this state. (See, e.g., Educ. Code, §§ 68050, 72289, 72245, 72246, 72247, 72248, 72250, 72251.) In the absence of compelling reasons to the contrary, and since we find no such reasons have been advanced by Gurfinkel herein, we decline to interfere with the legislative procedure set down in this regard.

■ Gurfinkel's final contention that the durational residency requirement constitutes an irrebutable presumption of nonresidency thus denying her access to higher education is also answered by *Kirk, supra,* 273 Cal.App.2d 430.

"[T]he durational residence requirement is not set up in terms of an absolute classification. A student from another state, like petitioner, is classified as a nonresident because [she] is presumed to be in California primarily for educational purposes. If appropriate facts and circumstances arise subsequent to a student's classification as a nonresident, there is nothing in the regulation that would prevent petitioner's reclassification as a resident. She is merely required to present sufficient evidence to overcome the presumption of nonresidence. There is here . . . no arbitrary permanent classification of nonresidency which prohibits her from subsequently proving that she does, in fact, qualify for resident tuition. Furthermore, just as petitioner did not automatically acquire resident student status by her marriage, a person who qualifies as a *resident* student does not lose such status by virtue of marriage to a nonresident who lives in California. We conclude that the durational residence requirement . . . was reasonable." (*Id.,* at p. 443.)

Gurfinkel's contentions are more appropriately subject matter for consideration by the Legislature.

The judgment is affirmed.

Cobey, J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1981. Newman, J., was of the opinion that the petition should be granted.