[No. A027850. First Dist., Div. Five. Nov. 26, 1986.]

MARIA RIOS et al., Plaintiffs and Respondents, v.
EMPLOYMENT DEVELOPMENT
DEPARTMENT et. al., Defendants and Appellants.

JULIAN RODRIGUEZ, Plaintiff and Respondent, v.
EMPLOYMENT DEVELOPMENT
DEPARTMENT et al., Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, John Davidson and Winifred Y. Smith, Deputy Attorneys General, for Defendants and Appellants.

Marilyn A. Woollard, Barbara A. Jones, Victor M. Chavez and Juan Arambula for Plaintiffs and Respondents.

**OPINION**

**KING, J.**—In this case we uphold a superior court ruling that nine migrant farmworkers were "available for work" as required by statute, despite their return to their permanent homes in Texas during the off-season, and thus were eligible for unemployment insurance benefits.

The nine farmworkers all maintain permanent homes in the lower Rio Grande Valley area of Texas. On a yearly basis, for as many as 25 years, each has migrated to California to perform seasonal agricultural work from April through September or October. They return home to Texas in the fall, when the state migrant labor camps close and seasonal work becomes scarce.

The present case arose when the farmworkers applied for unemployment insurance benefits in 1981. Upon their return to Texas that fall they vigorously sought agricultural employment, but were largely unsuccessful because the Texas employers had already hired local workers and preferred

not to hire migrant laborers. The farmworkers were willing to accept non-agricultural work, but their previous experience had been limited to farm labor.

The California Employment Development Department (CEDD) denied benefits to all nine farmworkers, reasoning that because they had moved from California to an area where they were less likely to find employment, they were not "available for work" as required by Unemployment Insurance Code section 1253, subdivision (c). The California Unemployment Insurance Appeals Board (CUIAB) upheld the CEDD determinations.

On October 13, 1982, eight of the farmworkers filed a petition for writs of administrative mandate (Code Civ. Proc., § 1094.5) and declaratory and injunctive relief, challenging the denial of benefits and the validity of five precedent benefit decisions of the CUIAB. The ninth farmworker filed a separate petition for writ of administrative mandate on February 9, 1983.[1] The actions were consolidated by stipulation.

The superior court rendered judgment for the farmworkers, holding the CEDD and CUIAB had erred in denying benefits. The court also declared the challenged precedent benefit decisions were invalid to the extent they conflicted with two California Supreme Court decisions, and enjoined further reliance upon them.

## I. *Availability for Work*

The fundamental question is whether the farmworkers remained "available for work" within the meaning of Unemployment Insurance Code section 1253, subdivision (c), after they restricted their labor market to the lower Rio Grande Valley area.

■ "'Availability for work' within the meaning of section 1253, subdivision (c), requires no more than (1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment." (*Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740], fn. omitted; accord, *Glick* v. *Unemployment Ins. Appeals Bd.* (1979) 23 Cal.3d 493, 499 [153 Cal.Rptr. 1, 591 P.2d 24].) In other words, "the requirement of availability does not preclude claimants from placing *some* restrictions on their availability to

---

[1]The ninth farmworker had worked in the Sacramento Valley; the other eight had worked in the San Joaquin Valley.

accept employment, as long as they remain available for employment by a more than minimal number of employers in the community." (*Glick* v. *Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at pp. 502-503, italics in original.) If the claimant shows good cause for restricting his or her labor market, the burden shifts to the CEDD to prove unavailability to a substantial field of employment. (*Sanchez* v. *Unemployment Ins. Appeals Bd., supra,* 20 Cal.3d at pp. 70-71.)

The superior court in the present case held (1) the farmworkers sustained their burden of showing willingness to accept suitable work which they had no good cause for refusing, and (2) the CEDD failed to prove unavailability to a substantial field of employment. The CEDD and CUIAB challenge both aspects of the court's ruling.

A. Good Cause for Restriction.

The CEDD and CUIAB first contend the court erred in finding the farmworkers had good cause for restricting their labor markets to the lower Rio Grande Valley area. Appellants argue the farmworkers simply moved to Texas as a matter of personal preference, and this did not constitute good cause.

The farmworkers contend the superior court found their move to Texas caused no material reduction in their labor markets (presumably because work was as hard to get in California at that time of year as it was in Texas), so that they did not have to show good cause for the move. But the farmworkers did restrict their labor market by making themselves unavailable for work in California. They were required to show good cause for this restriction.

There was substantial evidence of good cause. In the administrative proceedings the farmworkers testified, variously, that they returned to Texas because the migrant labor camps where they resided were closed down in the fall, they could not afford the high cost of housing in California while they were unemployed, they could not find work in California at that time of year, the cost of living in California is higher than in the lower Rio Grande Valley, and they had to place their children in school. The farmworkers maintained permanent homes in Texas; some of them even owned residences there. The evidence of simultaneous loss of work and affordable housing was alone sufficient to support the court's finding that the farmworkers had good cause to return to their permanent homes in Texas. (Cf. *Glick* v. *Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at pp. 500-501 [law student had good cause for not accepting work which would conflict with schooling requirements]; *Sanchez* v. *Unemployment Ins. Appeals Bd.,*

*supra,* 20 Cal.3d at pp. 69-70 [mother had good cause for not accepting work on days when she had to care for her son].)

The CEDD and CUIAB cite *Swaby* v. *Unemployment Ins. Appeals Bd.* (1978) 85 Cal.App.3d 264 [149 Cal.Rptr. 336], disapproved on another point in *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101 [172 Cal.Rptr. 194, 624 P.2d 244], for the proposition that migrant workers must remain mobile and might make themselves unavailable for work if they restrict their labor market to a single location. In other words, appellants contend that because the farmworkers in the present case were migrant laborers, they had no good cause for restricting their labor markets by terminating their migratory condition.

The court in *Swaby* merely held, however, that the migrant worker in that case was unavailable for work because he unreasonably restricted his availability to an insubstantial field of employment: he was only willing to perform grapefield work for a single employer in a single locale, and this work was out of season when he applied for benefits. (*Id.*, at pp. 270-271.) The *Swaby* court did not hold, nor do we, that migrant workers must live as unwilling nomads, in a state of perpetual migration, in order to be eligible for unemployment benefits.

■ The basic human need to have a permanent home may, in some cases, in itself constitute justification for a migrant worker to restrict his or her labor market in the off-season, so long as the worker remains available to a substantial field of employment. Here, of course, the farmworkers showed their return to Texas was motivated by economic necessity. Upon this showing of good cause, they were entitled to receive benefits unless the CEDD proved they did not make themselves available to a substantial field of employment in Texas.

B. Substantial Field of Employment.

■ On the question whether the farmworkers remained available to a substantial field of employment, the superior court found the CEDD and CUIAB failed to sustain their burden of proof because the evidence upon which they relied—comparative unemployment rates between California and Texas labor markets and the Texas employers' preference for permanent residents and reluctance to hire migrant workers—did not establish unavailability. The CEDD and CUIAB challenge this ruling. They argue that despite the presence of agricultural and nonagricultural work in the lower Rio Grande Valley area, the farmworkers were not available to a substantial

field because, as a practical matter, there was no demand for their labor: agricultural employers had already hired local workers and preferred not to hire migrant laborers, the farmworkers had little nonagricultural experience, and the farmworkers in fact had found little or no employment in Texas for many years.[2]

The CEDD and CUIAB in effect claim they proved unavailability by showing employment in Texas was *unlikely*. They rely on a passage in *Sanchez* which explained the use of the term "substantial field." The Supreme Court said "[t]he term 'field' is used to avoid any implication that the measure of availability is necessarily the likelihood of employment in a given market." (*Sanchez v. Unemployment Ins. Appeals Bd., supra,* 20 Cal.3d at p. 67, fn. 11.) The CEDD and CUIAB contend the use of the qualifying word "necessarily" indicates that although the measure of availability is not "necessarily" the likelihood of employment, it can be in some cases.

This interpretation, however, is foreclosed by the further statement in *Sanchez* itself, reiterated in *Glick,* that "'the test of availability *may not be predicated upon the lack of openings* for a claimant, but rather must be based upon whether there is a potential employment field.'" (*Sanchez v. Unemployment Ins. Appeals Bd., supra,* 20 Cal.3d at p. 67, fn. 11, italics added, quoting CUIAB Precedent Benefit Decision P-B-313 (1976); *Glick v. Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at p. 502.) The *Glick* opinion also quoted a commentator's statement that the requirement of availability "'*does not mean that job vacancies must exist*; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them.'" (*Glick v. Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at p. 502, fn. 4, italics added, quoting Freeman, *Able to Work and Available for Work* (1945) 55 Yale L.J. 123, 124.)

It is quite clear from *Sanchez* and *Glick* that the likelihood of employment can *never* be the measure of availability. Thus it is irrelevant whether there was actually a demand for the farmworkers' labor in Texas. So long as they remained "available for employment by more than a minimal number of employers in the community" (*Glick v. Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at p. 503)—a fact which the CEDD and CUIAB do not

---

[2]The Texas Employment Commission expressed opinions that one of the farmworkers had a "good" chance of finding work, four had a "fair" chance, and two had a "poor" chance. The CEDD and CUIAB challenge the integrity of these opinions, suggesting the commission was motivated by the desire for the farmworkers to have a source of income while they were living in Texas. The assessment of the credibility of the opinions, however, was a matter within the exclusive province of the trial court.

dispute—they were eligible for unemployment insurance benefits. The trial court properly concluded the presentation of evidence that the farmworkers were not likely to be employed in Texas was insufficient to sustain the burden of proving unavailability to a substantial field of employment.

## II. *Validity of the Precedent Benefit Decisions*

■ The CEDD and CUIAB also contend the superior court erred when it declared five CUIAB precedent benefit decisions were invalid "insofar as the decisions are inconsistent with *Sanchez* and *Glick.*" (Precedent Benefit Decision P-B-206 (1976); Precedent Benefit Decision P-B-170 (1976); Precedent Benefit Decision P-B-141 (1972); Precedent Benefit Decision P-B-61 (1969); Precedent Benefit Decision P-B-17 (1968).) In each of these decisions the CUIAB denied benefits based solely on the claimant's reduction of his or her labor market (e.g., by moving to another geographical locale). The superior court declared the decisions did not accurately state the *Sanchez-Glick* test of availability.

The CEDD and CUIAB argue these precedent benefit decisions remain valid because *Sanchez* and *Glick* still permit consideration of a claimant's reduction of his or her labor market. But under the test set forth in those two cases, whether claimants have reduced their labor markets is only half the question. Claimants may reduce their labor markets for good cause and remain eligible for benefits, as long as they are available to a substantial field of employment. (*Glick* v. *Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at p. 503.)

The challenged precedent benefit decisions predate *Sanchez* and *Glick* and are inconsistent with the standard set forth in those cases. Each precedent benefit decision stated that to be considered available for work, a claimant must be ready, willing, and able to accept suitable employment in a labor market where there is a demand for his or her services. This standard does not embrace the two-step test of availability set forth in *Sanchez* and *Glick.* It improperly focuses on likelihood of employment rather than availability to a substantial field, and is inconsistent with the statement in *Glick* that "the requirement of availability does not preclude claimants from placing *some* restrictions on their availability to accept employment, as long as they remain available for employment by a more than minimal number of employers in the community." (*Glick* v. *Unemployment Ins. Appeals Bd., supra,* 23 Cal.3d at p. 503.) The superior court ruled properly on the validity of the precedent benefit decisions.

### III. *Conclusion*

The record indicates the farmworkers in this case are not, as the CEDD and CUIAB seem to suggest, clever manipulators of the unemployment insurance system, but instead are victims of an economy that cannot employ them full time. In the year in question, 1981, they migrated to California to do work that is essential to this state's agricultural industry. Once the work season ended and the migrant labor camps closed, their prospects for finding employment and affordable housing in California were diminished considerably. The Legislature has provided that, as seasonal agricultural workers, they are eligible for benefits while unemployed. (Unemp. Ins. Code, § 611; *Garcia* v. *California Employment Stabilization Com.* (1945) 71 Cal.App.2d 107 [161 Cal.Rptr. 972].) They returned to their permanent homes in Texas, where they sought work vigorously but unsuccessfully. The superior court found the record did not show the labor market in their California communities was significantly greater than in the lower Rio Grande Valley, and we must accept that finding.

The farmworkers' return to Texas, motivated by economic necessity, did not cause them to be unavailable for work under California law, because they remained available to a substantial field of employment pursuant to the statutory scheme as interpreted by our Supreme Court in *Sanchez* and *Glick*. If the law providing for payment of unemployment benefits to migrant workers who return to their permanent homes in another state during the off-season is to be changed, the Legislature is the appropriate branch of government to do so.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.